845 A.2d 884 (2004)
In the Interest of: N.S., K.G., P.A.
Appeal of: D. & M.B.[1]
Superior Court of Pennsylvania.
Argued October 21, 2003.
Filed March 16, 2004.
*885 Robert B. Gidding, Bala Cynwyd, for appellants.
Jason Kutulakis, Carlisle, for appellee.
BEFORE: JOHNSON, MONTEMURO[*] and TAMILIA, JJ.
OPINION BY TAMILIA, J.:
¶ 1 M.B., former foster mother of N.S., K.G. and P.A., hereinafter referred to as "the children," appeals from the Order docketed December 11, 2002, finding she did not have standing to pursue adoption and/or visitation proceedings relative to the children who were removed from her home pursuant to a court Order following allegations of abuse. We affirm.
¶ 2 The facts as gleaned from the record follow. Appellant and her now deceased husband welcomed N.S., K.G. and P.A. into their licensed foster home on March 18, 1995, March 18, 1995, and December 7, 1993, respectively, and there they remained until March 20, 2001, when the children were removed from the home based on allegations of abuse. Appellant's brief at 5. Appellant appealed that decision, as well as the closure of her home as an approved, licensed, foster home, and on October 20, 2001, following two days of testimony, the Bureau of Hearings and Appeals of the Department of Welfare *886 (BHA) recommended dismissal of the appeal for lack of jurisdiction. The BHA explained that because the children were removed pursuant to a court order for allegations of abuse, under 55 Pa.Code § 370-73, such removal was not appealable by foster parents.
¶ 3 While appellant then withdrew her appeal, on November 14, 2001 she filed another Emergency Petition for Visitation, in the Juvenile Division of the Court of Common Pleas of Dauphin County, seeking (1) a hearing on whether it was in the children's best interests that they be returned; (2) a ruling that she may proceed with adoption; (3) a ruling that CYS's refusal to allow her to adopt was unreasonable; (4) regular unsupervised visitation; or (4) any relief the court may deem appropriate. Trial Court Opinion, Hoover, J., 12/11/02 at 2. The court conducted an in camera conference and, as a consequence of those discussions, on January 15, 2002 issued an Order that proposed findings and stipulations be filed by the parties. The parties stipulated to facts, and following review of those facts, the certified record, and the applicable legal principles, the trial court found appellant lacked standing to pursue the relief requested. This appeal followed the Order entered December 11, 2002.
¶ 4 We have summarized appellant's eight issues as follows. Appellant argues the trial court erred by finding, without benefit of hearing, that despite the fact she had been cleared of allegations of abuse, she nevertheless lacked jurisdiction to seek custody and/or visitation with the children. Relying on Mitch v. Bucks County CYS, 383 Pa.Super. 42, 556 A.2d 419, 421 (1989), appellant contends she was a "prospective adoptive parent", not a "foster parent" and entitled to pursue adoption; in the alternative, she argues she had achieved the status of in loco parentis, and therefore had standing to sue for custody and/or visitation. Appellant also argues the court erred by (1) "not placing any proceedings on the record"; (2) "not following its own order that it review agency files in camera and not making available documents from those files relevant to standing"; and (3) not considering an affidavit written by a former agency employee, Nathan Nguyen. Appellant's brief at 2.
¶ 5 Initially we note that appellant filed her complaint for visitation/custody in the wrong court; such matters are addressed in domestic relations court not juvenile court.[2] To the extent the petition was one to consider standing for permission to adopt, however, the trial judge could exercise the power to make that decision so long as the appropriate petition or complaint had been filed. In the interest of judicial economy, the court addressed the primary issue of standing. See Trial Court Opinion, Hoover, J. 4/24/03 n.2.
¶ 6 As for appellant's arguments on appeal, she did not request a hearing on her petition, but rather apparently was agreeable to the in-chambers conferences and discussions preceding the court's resolution of the issues based upon stipulations and proposed statements of fact. Her argument she was denied an opportunity to be heard is disingenuous at best.
¶ 7 In Pennsylvania, to have standing to file a petition for adoption, the third party must establish that she either currently acts in loco parentis to the prospective adoptee or has obtained the written consent from the guardian of the child.
*887 In the Matter of the Adoption of A.M.T. and C.C.T., 803 A.2d 203 (Pa.Super.2002). In order for a third party to pursue such adoption or visitation, the party must have standing, and standing for a third party can exist only where the legislature has specifically conferred it or where the party stands in loco parentis to the child. T.B. v. L.R.M., 567 Pa. 222, 786 A.2d 913 (2001).
¶ 8 We agree that appellant lacked standing to pursue visitation and/or adoption of the children for whom she previously had provided foster care. Section 6336.1 of the Juvenile Act, Notice and hearing, states that concerning dependent children, "[u]nless a foster parent, preadoptive parent or relative providing care for a child has been awarded legal custody pursuant to section 6357 [Rights and duties of legal custodian] (relating to rights and duties of legal custodian), nothing in this section shall give the foster parent, preadoptive parent or relative providing care for the child legal standing in the matter being heard by the court." Not only had appellant not been awarded legal custody of the children, at the time she filed her petition seeking visitation or custody, she was no longer a licensed foster care provider.
¶ 9 Mitch, supra, relied upon by appellant, was decided prior to the enactment of § 6336.1, Notice and hearing, and involved foster parents who had entered into a preadoptive placement agreement with the county agency involved. Appellant's suit was brought following the enactment of § 6336.1 and appellant had not entered a preadoptive placement agreement with the county. As explained by the trial court herein, a foster parent's rights are subordinate to those of the agency that has legal custody.
Numerous Pennsylvania cases lead this court to the conclusion that as merely potential adoptive parents, [appellant] lack[s] standing to seek the relief requested. Pursuant to Mitch v. Bucks County Children & Youth Service, 383 Pa.Super. 42, 556 A.2d 419 (Pa.Super.[1989]), the [appellant is not a pre-adoptive parent]. Since Mitch, the Supreme Court decided In re: G.C., [558 Pa. 116], 735 A.2d 1226 (1999) in which it reviewed and relied upon previous decisions defining the status of a foster parent as a "limited and subordinate, state created, agency maintained relationship". Id. [at] 1230. The Court reminded that, pursuant to Chester County Children and Youth Services v. Cunningham, 431 Pa.Super. 421, 636 A.2d 1157 (1994), "foster parents lack standing to pursue adoption proceedings without the consent of the agency that has legal custody." Chester County CYS, at 423, 636 A.2d 1159. In this instance, CYS does not consent to the adoption proceeding, and therefore, as [a] foster parent, [appellant] lacks standing.
Trial Court Opinion at 3.
¶ 10 We likewise find unconvincing appellant's argument she stood in loco parentis and therefore had standing to pursue her petition. In In re Adoption of Crystal D.R., 331 Pa.Super. 501, 480 A.2d 1146 (1984), wherein the foster parents sought termination of the parental rights of the children for whom they cared, the Court considered their argument that as caregivers they stood in loco parentis, but nonetheless concluded they lacked standing to bring suit. The Court reasoned the foster parents did not stand in loco parentis to the child because the state agency involved had responsibility for the actual care and custody of the child. The foster parents' rights were subordinate to those of the birth parents and those of the state agency that awarded foster care of the children to the appellants. In its supplemental Opinion, the trial court herein addressed in *888 detail the status of in loco parentis and its relationship to appellant's demonstrated intent concerning adoption of the children.
Having reviewed the Proposed Statement of Facts and Stipulations by both parties, made part of this record, we conclude that Petitioners[3] were never more than foster parents. There is no question that the [petitioners] were interested in pursuing adoption. There is also no question that the Children & Youth Agency considered changing the goal to adoption.
However, of significance to this Court is not what the [petitioners] did to make themselves available for adoption, but what Children & Youth Agency, did as primary physical, and legal custodians of these three children. Significantly, Children & Youth did not move forward toward relinquishing their custodial obligations to these three children.
There was no question that the [petitioners] explored the possibility of adoption. But, after they realized that their subsidies as foster parents exceeded that which they would obtain as adoptive parents their interest in adoption waned until the three child were removed from their home based on abuse allegations.
The court might have been persuaded otherwise on the issue of standing if Children & Youth Agency gave consent to the [appellants] to adopt, and a Petition of Intent to Adopt had been filed. Perhaps, if there had been a request by the Agency to obtain a Report of Intermediary, this court might have been persuaded otherwise on the issue of standing. Of note, the most recent Questionnaire for Perspective [sic] Adopting Parents was dated November 1996.
We cannot over-emphasize the significance of the fact that the Children and Youth Agency was granted custody of all three children pursuant to 23 Pa. C.S.A. § 2311 and pursuant to § 2521(c), such that the Children and Youth Agency stands in loco parentis to all children. There is no question that the [petitioners] discharged parental duties as foster parents, but they never assumed the obligations incident to a parental relationship. While they had physical possession of the children and therefore discharged duties as to the children's day-to-day needs, it does not follow that they are in loco parentis or have undertaken the rights and responsibilities that exist between parent and child.
Trial Court Opinion Hoover, J., at 4-5. We conclude the trial court neither erred nor abused its discretion when it found appellant lacked standing to pursue visitation with or custody of her former foster children.
¶ 11 Appellant also argues the trial court erred by "not placing any proceedings on the record," and not reviewing in camera and making available documents relative to the issue of standing. Appellant's first boilerplate allegation will not be addressed as there is no supporting argument. As to the argument the court did not review agency files in camera, the court specifically stated that it did review such files in the matter agreed upon by the parties.
This Court reviewed many documents, which had no relevance to the issue of standing. The process involved reviewing numerous boxes of information, mostly medical in nature, which were irrelevant to the issue of standing. Counsel for the Petitioners and Children *889 & Youth Agency were satisfied with the procedure by which the court would review that information, in camera, and retrieve from the file any information relevant to the issue of standing. We did so, and found none. While Petitioner's [sic] now complain that this was Trial Court's err, Petitioners agreed to the process followed.
Trial Court Opinion at 3.
¶ 12 Lastly, appellant argues the court erred by refusing to consider an affidavit by Nathan Nguyen, a former employee of the agency, submitted on her behalf. "This affidavit contained material facts relating to whether the parents were `prospective adoptive parents' or merely `foster parents'." Appellant's brief at 14. The court noted that it rejected the affidavit submitted to it in chambers because it was not made part of the stipulations set forth in the Order of April 9, 2002. Id. at 2; Record No. 98-1, Order. In addition to this legitimate finding by the trial court, we note that the issue of appellant's "status" is a legal conclusion, unable, based on the facts before us, to be altered by an affidavit.
¶ 13 Having found all of appellant's arguments devoid of merit, we affirm the Order denying relief.
¶ 14 Order affirmed.
NOTES
[1] Since the filing of this appeal, D.B., former foster father of the children, has died. By Order dated July 10, 2003, he was dismissed as an appellant.
[*] Retired Justice assigned to Superior Court.
[2] Since Juvenile Court and Domestic Relations Court are both courts of general jurisdiction, a procedural error involving the venue of filing the complaint does not diminish the capacity of the court to determine a matter of personal jurisdiction such as standing.
[3] The court employs the plural form of "petitioner" as at that time, husband was party to the underlying petition and subsequent appeal