J-A28025-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.S. | : | No. 669 EDA 2019 |

Appeal from the Order Entered February 13, 2019
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No:  CP-51-DP-0002088-2015

BEFORE:   PANELLA, P.J., STABILE, J., and COLINS, J.[*]

MEMORANDUM BY STABILE, J.:                          **FILED JULY 15, 2020**

M.S. ("Appellant") appeals *pro se* from the permanency review order entered February 13, 2019, in the dependency case of her former foster child, K.R. ("Child"), a female born in July 2015.  She challenges the portion of the order concluding that she lacked standing to participate in Child's dependency proceeding and that it was appropriate to remove Child from her care.  After careful review, we affirm.

The circumstances leading to Child's placement in foster care are not relevant to our resolution of this appeal.  Briefly, the Philadelphia Department of Human Services ("DHS") obtained protective custody of Child on July 27, 2015.  The trial court entered a shelter care order on July 29, 2015, and adjudicated Child dependent on August 6, 2015.  The court entered an order

_____

[*] Retired Senior Judge assigned to the Superior Court.

on February 16, 2016, directing that DHS place Child in a pre-adoptive foster home. On July 26, 2016, the court changed Child's permanent placement goal from return to parent or guardian to adoption. While termination decrees do not appear in the certified record, the court indicates that it terminated the parental rights of Child's mother and father at or near the same time. N.T., 5/31/18, at 2.

It is not clear from the record when DHS placed Child in Appellant's care. As best we can discern, Child's placement had occurred by at least July 2016, based on a statement by the trial court that Appellant was Child's foster parent at the time it terminated the parental rights of Child's mother and father. N.T., 7/17/18, at 11-12. Importantly, although Child remained in Appellant's care until November 2017, there is no indication in the record that she ever had legal custody. DHS removed Child from Appellant's care after it received allegations that members of Appellant's family assaulted her two adopted children while she was present. N.T., 2/13/19, at 12-13. DHS conducted an investigation and deemed Appellant an indicated perpetrator of abuse.[1] *Id.* at 14.

_____

[1] The current status of the indicated report also is unclear. While DHS presented testimony on February 13, 2019, that it had deemed Appellant an indicated perpetrator of abuse, DHS also filed a brief prior to the hearing explaining that Appellant appealed her indicated status to the Board of Hearings and Appeals, that the matter was stayed for a period of time, and that DHS "filed a Notice of Non-Pursuit as to [Appellant's] appeal, as [her

The trial court held a permanency review hearing on May 31, 2018, at which time counsel for DHS requested that the court schedule a "formal judicial removal" hearing to address Child's removal from Appellant's care.[2] N.T., 5/31/18, at 3. The court attempted to hold a hearing on July 17, 2018, but Appellant arrived late and her privately-retained counsel was not present. Thus, the court continued the matter to August 21, 2018. The court attempted to hold a hearing on that date, but then continued the matter again, apparently to give Appellant's counsel the opportunity to respond to the brief that counsel for DHS had filed. Appellant's counsel did not file a response and

_____

adopted son] indicated that he was unwilling to testify against [her]." DHS's Prehearing Brief, 8/9/18, at 2 (unnumbered pages).

[2] Our Rules of Juvenile Court Procedure provide that a county agency may remove a foster child from his or her current placement without trial court approval in an emergency situation. Pa.R.J.C.P. 1606(A)(1)(a). However, the agency must notify the court and file a motion or stipulation for modification of the child's dispositional order. Pa.R.J.C.P. 1606(A)(1)(b)-(c). The court may then "schedule a prompt hearing to determine whether there will be a modification of the child's placement[.]" Pa.R.J.C.P. 1606(D)(1). In situations that are not emergencies, the agency must "seek approval of the court . . . prior to the removal of the child from the placement by the filing of a motion or a stipulation for modification of the dispositional order[,]" after which the court may schedule a hearing. Pa.R.J.C.P. 1606(A)(2), (D)(1). In addition, an administrative process exists through which a foster parent may appeal the removal of a child from his or her care, unless certain exceptions apply. **See**, **e.g.**, 55 Pa. Code § 3700.73(a)(5) (providing that a foster parent may not appeal if "[a]n investigation of a report of alleged child abuse indicates the need for protective custody removal to protect the child from further serious physical or mental injury, sexual abuse or serious physical neglect[.]"). Because the procedure that the trial court employed in this case has not been challenged, we offer no opinion on it in this memorandum.

failed to appear at the hearing on January 8, 2019, although Appellant herself was present, resulting in yet another continuance.

Finally, the judicial removal hearing took place on February 13, 2019. After hearing argument from counsel for Appellant and DHS, the trial court ruled that Appellant lacked standing to participate in the hearing, in terms of presenting evidence and cross-examining witnesses, but that she had the right to notice and the opportunity to be heard. N.T. 2/13/19, at 4-12. DHS then presented testimony regarding the propriety of its decision to remove Child from Appellant's care and Appellant responded with a brief statement. *Id.* at 12-20. Ultimately, the court ruled that Child's removal was appropriate. *Id.* at 23.

Following the hearing, the trial court entered the permanency review order complained of on appeal. The order stated, in relevant part, "Court rules that former pre-adoptive foster parent, [Appellant,] have [*sic*] no standing in this case. Court rules that the removal of the child, [Child,] from former pre-adoptive foster parent, [Appellant,] was appropriate." Order, 2/13/19, at 1. Despite retaining private counsel, Appellant timely filed a *pro se* notice of appeal on February 25, 2019, as well as a *pro se* concise statement of errors

complained of on appeal.[3, 4]  This Court entered an order on April 2, 2019,

directing Appellant's counsel to file a concise statement by April 12, 2019.

_____

[3] We conclude that the February 13, 2019 order is appealable as a collateral order.  **See** Pa.R.A.P. 313(b) ("A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.").  The question of Appellant's standing is separable from and collateral to the main cause of action in this dependency case and involves a right too important to be denied review.  **See In re J.S.**, 980 A.2d 117, 122 (Pa. Super. 2009) ("[T]he issue of Foster Parents' standing to intervene in the dependency proceedings is separable from the central issue during the current stage of the dependency proceedings, facilitating permanency. . . . Foster Parents' putative right to intervene in the ongoing dependency proceedings is too important to be denied review.").  In addition, Appellant's standing claim will be irreparably lost if we postpone review until final judgment.  If Appellant waits to appeal the February 13, 2019 order until the trial court enters a final order, her appeal will be untimely.  Because of the court's determination that Appellant lacks standing, she will also be unable to appeal whatever final order the court enters.  **See K.W. v. S.L.**, 157 A.3d 498, 502 (Pa. Super. 2017) (discussing **K.C. v. L.A.**, 128 A.3d 774 (Pa. 2015)).

[4] The fact that Appellant filed a *pro se* notice of appeal while retaining private counsel does not impede our review of this appeal.  As we have explained:

> . . . . As a general matter, our courts prohibit *pro se* filings by represented appellants, and we treat those filings as legal nullities.  However, *pro se* notices of appeal are an exception to this rule.  In **Commonwealth v. Cooper**, 27 A.3d 994, 1007 (Pa. 2011), our Supreme Court held that a *pro se* notice of appeal, filed while Cooper was represented by counsel, was not a legal nullity, but was simply "premature."  More recently, this Court observed that *pro se* notices of appeal filed by represented appellants are distinguishable from other forms of hybrid representation, because they protect the appellants' right to appeal as set forth in the Pennsylvania Constitution.  **Commonwealth v. Williams**, 151 A.3d 621, 624 (Pa. Super. 2016) ("Because a notice of appeal protects a constitutional right, it is distinguishable from other filings . . . . We thus hold that this Court is required to docket a

Counsel filed a concise statement on April 12, 2019, but failed to serve the trial court. As a result, this Court entered another order on April 15, 2019, directing counsel to serve the trial court by April 19, 2019. Counsel complied by filing the concise statement in the trial court on April 16, 2019, along with a certificate of service indicating that he had served the trial court. Counsel then filed an application to withdraw in this Court on April 27, 2019. This Court denied counsel's application on May 8, 2019, without prejudice to his right to seek relief in the trial court. Counsel filed the application to withdraw in the trial court on May 30, 2019, which the court granted on June 7, 2019. Appellant has proceeded *pro se* since that time.

On appeal, Appellant appears to argue (1) that DHS removed Child from her care without a necessary court order, (2) that DHS presented insufficient evidence in support of its abuse allegations against her, and (3) that the trial court violated her right to due process by concluding that she lacked standing, and by prohibiting her from presenting evidence or cross-examining witnesses during the judicial removal hearing on February 13, 2019. Appellant failed to include her first and second claims in her counseled concise statement. Thus,

---

pro se notice of appeal despite Appellant being represented by counsel[.]"). . . .

**S.C.B. v. J.S.B.**, 218 A.3d 905, 911 n.4 (Pa. Super. 2019) (citation omitted).

they are waived.[5]  ***See In re M.Z.T.M.W.***, 163 A.3d 462, 466 (Pa. Super. 2017) ("[I]t is well-settled that issues not included in an appellant's . . . concise statement of errors complained of on appeal are waived.").

Appellant's *pro se* brief also fails to comply with our Rules of Appellate Procedure.  Appellant's brief is a mere two-page document, followed by a table of contents and a series of exhibits.  Appellant did not divide her brief into the appropriate sections and largely fails to explain and develop her arguments with citation to relevant legal authority.  ***See*** Pa.R.A.P. 2111(a) (listing the requisite sections of an appellant's brief); ***see also M.Z.T.M.W.***, 163 A.3d at 465 ("It is well-settled that this Court will not review a claim unless it is developed in the argument section of an appellant's brief, and supported by citations to relevant authority.").  This Court has emphasized that an appellant's *pro se* status does not excuse him or her from compliance with our Rules.  ***See S.S. v. T.J.***, 212 A.3d 1026, 1032 (Pa. Super. 2019) ("[*P*]*ro se* status confers no special benefit upon the appellant.  To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing.") (quotation marks and citations omitted).

---

[5] Because Appellant filed her *pro se* concise statement while she still retained private counsel, it was arguably a legal nullity.  ***S.C.B.***, 218 A.3d at 911 n.4. However, even if Appellant's *pro se* concise statement was not a legal nullity, we would conclude that she waived her first and second issues by failing to include them there as well.

However, Appellant's noncompliance does not require that we quash or dismiss her appeal automatically. Rule 2101 specifies that this Court "may" quash or dismiss an appeal "if the defects are in the brief . . . of the appellant and are substantial[.]" Pa.R.A.P. 2101. In addition, this Court has explained that we will quash or dismiss an appeal due to a defective brief only when we are unable to discern the issues that the appellant wishes to raise on appeal, or when the defective briefly impedes appellate review. *See Kern v. Kern*, 892 A.2d 1, 6 (Pa. Super. 2005), *appeal denied*, 903 A.2d 1234 (Pa. 2006) ("[A]s a practical matter, this Court quashes appeals for failure to conform to the Rules of Appellate Procedure only where the failure to conform to the Rules results in the inability of this Court to discern the issues argued on appeal."); *Bennett v. Bennett*, 168 A.3d 238, 244 (Pa. Super. 2017), *appeal denied*, 181 A.3d 1081 (Pa. 2018) ("Although this Court is authorized to quash a nonconforming brief, Husband's procedural missteps do not substantially impede our ability to perform appellate review, and we shall address the merits of the arguments that have been preserved for review in the Rule 1925(b) statement.").

Here, although Appellant failed to comply with our briefing rules, her noncompliance does not impede our ability to discern her issues on appeal or to conduct appellate review. Appellant's only preserved claim on appeal, in which she challenges the trial court's conclusion that she lacked standing, and its decision to prohibit her from presenting evidence or cross-examining

witnesses during the judicial removal hearing, is readily discernible. It also is a relatively straightforward issue, requiring only a brief review of the record and the relevant law. Thus, we decline to quash or dismiss Appellant's appeal and we proceed to address her claim on the merits.[6]

Appellant's standing challenge presents a question of law. As such, this Court applies a *de novo* standard of review and a plenary scope of review. **In re S.H.J.**, 78 A.3d 1158, 1160 (Pa. Super. 2013), *appeal denied*, 81 A.3d 78 (Pa. 2013).

The Juvenile Act governs dependency proceedings. **See** 42 Pa.C.S.A. §§ 6301-6375. Generally, only a "party" possesses standing to participate in a child's dependency proceeding, which includes the right to present evidence and cross-examine witnesses, as well as the right to counsel. **In the Interest of M.R.F.**, **III**, 182 A.3d 1050, 1055-56 (Pa. Super. 2018). The Juvenile Act does not specify who qualifies as a party to a child's dependency proceeding. However, this Court's case law limits party status to only three classes of persons, "(1) the parents of the juvenile whose dependency status is at issue;

---

[6] The record reveals one further complication. Specifically, Appellant's counsel appeared to concede during the hearing on August 21, 2018, that Appellant did not have standing. Counsel stated, "I just want to put on the record this one point we're not seeking legal standing, this is a judicial removal hearing. . . . we're not seeking legal standing." N.T., 8/21/18, at 3. However, counsel argued that Appellant did have standing during the judicial removal hearing on February 13, 2019. N.T., 2/13/19, at 4-6. The trial court directed that the purpose of the hearing was to determine whether Appellant had standing and ultimately ruled that she did not. *Id.* at 4, 10-11. Therefore, we decline to find waiver on that basis.

(2) the legal custodian of the juvenile whose dependency status is at issue, or

(3) the person whose care and control of the juvenile is in question." ***In re***

***L.C.***, ***II***, 900 A.2d 378, 381 (Pa. Super. 2006).

Neither the Juvenile Act nor our case law provides that a dependent child's foster parent qualifies as a party. The Juvenile Act provides as follows regarding the rights of a foster parent to participate in hearings during the dependency proceedings:

> **(a) General rule.--**The court shall direct the county agency or juvenile probation department to provide the child's foster parent, preadoptive parent or relative providing care for the child with timely notice of the hearing. The court shall provide the child's foster parent, preadoptive parent or relative providing care for the child the right to be heard at any hearing under this chapter. **Unless a foster parent, preadoptive parent or relative providing care for a child has been awarded legal custody** pursuant to section 6357 (relating to rights and duties of legal custodian), **nothing in this section shall give the foster parent, preadoptive parent or relative providing care for the child legal standing in the matter being heard by the court.**

42 Pa.C.S.A. § 6336.1(a) (emphasis added).

In this case, the trial court explained its conclusion that Appellant lacked standing as follows, in relevant part:

> In the instant matter, [Appellant] cannot be afforded standing in the dependency proceeding because she was not a parent of [Child] nor did she have custody of [] Child. Consequently, [Appellant's] right's [*sic*] during the hearing on February 13, 2019 were limited to timely notice of a hearing to determine if removal was appropriate and the opportunity to be heard. . . . In the instant case, [Appellant] was not only provided notice of the hearing but she was represented by counsel. [Appellant] attended a hearing on July 17, 2019. [Appellant] was subsequently represented by counsel during hearings on August 21, 2019 and February 13, 2019. During the hearing on February

13, 2019, the [Community Umbrella Agency] [r]epresentative Shannon Tarlton testified that Child [] was removed from [Appellant's] home as a result of an ongoing child abuse investigation related to the beating of [Appellant's] biological [*sic*] [c]hildren. During the hearing on February 13, 2019, [Appellant] along with her attorney present was given the opportunity to participate in the hearing. [Appellant] testified that she tried to avoid chaos in her household and that her [c]hildren were never abused. Although, [*sic*] [Appellant] alleges that there was an inherent bias against her in the proceedings the record clearly reflects that she was afforded representation and the opportunity to be heard during the hearing on February 13, 2019.

Trial Court Opinion, 6/12/19, at 3-4 (citations to the record omitted).

We agree with the trial court's analysis. It is clear that Appellant is not a party to this dependency proceeding pursuant to **L.C.**, **II, supra**. Appellant is not Child's parent, legal custodian, or the person whose care and control of Child is in question. Moreover, because Appellant has never had legal custody, the plain language of Section 6336.1(a) confirms that her status as Child's former foster parent does not entitle her to standing. **See In re N.S.**, 845 A.2d 884, 887 (Pa. Super. 2004) (concluding that a former foster parent lacked standing, explaining, "[n]ot only had [she] not been awarded legal custody of the children, at the time she filed her petition seeking visitation or custody, she was no longer a licensed foster care provider"); **L.C.**, **II**, 900 A.2d at 382 ("To achieve statutory standing under [Section 6336.1(a)], a foster parent, preadoptive parent or relative providing care must have legal custody of the child[.]"). Section 6336.1(a) provides that Appellant was entitled to notice and the right to be heard at the February 13, 2019 judicial removal hearing, and nothing more. The court complied with the statute by

providing Appellant notice and permitting her to make a statement. Thus, she is not entitled to relief.[7]

Based on the foregoing, we conclude that the trial court did not commit an error of law by concluding that Appellant lacked standing to participate in Child's dependency proceeding. Accordingly, we affirm the court's February 13, 2019 order.

Order affirmed.

---

[7] Prior to the enactment of Section 6336.1(a), our case law provided that a "prospective adoptive parent" possessed standing for the limited purpose of challenging the removal of a child from his or her care. **See Mitch v. Bucks County Children and Youth Social Service Agency**, 556 A.2d 419 (Pa. Super. 1989), *appeal denied*, 571 A.2d 383 (Pa. 1989); **In re Griffin**, 690 A.2d 1192 (Pa. Super. 1997), *appeal denied*, 700 A.2d 441 (Pa. 1997), *certiorari denied*, 523 U.S. 1004 (1998). Because Section 6336.1(a) plainly changes this prior case law, we conclude that a foster parent is not entitled to any form of standing in a dependency proceeding absent an award of legal custody, regardless of his or her "prospective adoptive" status. **See N.S.**, 845 A.2d at 887 ("**Mitch**, **supra**, relied upon by appellant, was decided prior to the enactment of [Section 6336.1(a)] and involved foster parents who had entered into a preadoptive placement agreement with the county agency involved."). We acknowledge that this Court suggested in **M.R.F.**, **III**, **supra**, that the "prospective adoptive parent" exception remains in place. However, our discussion in **M.R.F.**, **III**, was not essential to that opinion's holding and was, therefore, dicta. **See Castellani v. Scranton Times**, **L.P.**, 124 A.3d 1229, 1243 n.11 (Pa. 2015) (quoting **Valley Twp. v. City of Coatesville**, 894 A.2d 885, 889 (Pa. Cmwlth. 2006)) ("[D]icta is 'an opinion by a court on a question that is directly involved, briefed, and argued by counsel, and even passed on by the court, but that is not essential to the decision. Dicta has no precedential value.'"). In **M.R.F.**, **III**, we indicated that the appellants were "prospective adoptive parents," but that they lacked standing nonetheless, as they were not seeking to intervene for the purpose of challenging the removal of their foster child from their care. 182 A.3d at 1059. Accordingly, we held that the appellants were without standing under any prior rationale. **Id.** Thus, we conclude that **M.R.F.**, **III.**, is not applicable to our resolution of this issue.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 7/15/2020*