J-E02001-22

2023 PA Super 10

| | | |
|---|---|---|
| IN RE: ADOPTION OF: A.M.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: M.J.G. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 519 MDA 2021 |

Appeal from the Decree Entered March 31, 2021
In the Court of Common Pleas of Bradford County
Orphans' Court at 18 ADOPT 2020

BEFORE:  PANELLA, P.J., OLSON, J., DUBOW, J., KUNSELMAN, J., NICHOLS, J., MURRAY, J., McLAUGHLIN, J., McCAFFERY, J., and SULLIVAN, J.

OPINION BY MURRAY, J.:                          **FILED JANUARY 19, 2023**

M.J.G. (Former Stepfather) appeals from the decree dismissing his petition to adopt A.M.W. (Child) and granting the adoption petition filed by E.B. (Current Stepfather), joined by A.G. (Mother).[1]  After careful review, and consideration of our Supreme Court's recent decision in *In the Interest of K.N.L.*, --- A.3d ---, 2022 WL 10719028 (Pa. Oct. 19, 2022), we vacate and remand for the trial court to reconsider Former Stepfather's standing, appoint counsel for Child, and for further proceedings consistent with this decision.

---

[1] Generally, when a party seeks to appeal from two separate decisions entered on the same docket, the party must file two separate notices of appeal. *Dong Yuan Chen v. Saidi*, 100 A.3d 587, 589 n.1 (Pa. Super. 2014).  Here, Former Stepfather filed one notice of appeal indicating he was appealing from two decrees entered the same day.  Appellees Current Stepfather and Mother did not object, and the appeal period has expired.  Therefore, we decline to quash the appeal.  *See Gen. Elec. Credit Corp. v. Aetna Cas. & Sur. Co.*, 263 A.2d 448, 453 (Pa. 1970).

Child was born in December 2009. Child's biological father is not and has not been part of Child's life. Mother and Former Stepfather were in a relationship during Mother's pregnancy with Child and later married. They divorced in January 2017. Mother and Current Stepfather married in May 2019. In February 2021, the parties filed competing petitions to adopt Child. Former Stepfather summarized his relationship with Child as follows:

> I was in a monogamous relationship with [Mother] at the time of [Child]'s birth until our marriage. I was stepfather until [Mother] and I divorced on January 6, 2017. During that time, I helped teach [Child] to walk and to talk and I was her only father figure until [Current Stepfather] came into the picture. Her biological father was not involved whatsoever. [Child] has always called me "dad", "daddy", or words to that effect. I financially supported [Child] both before and after my divorce from [Mother] and I have provided health and dental insurance for most of her life, including at present. [Mother] publicly [*sic*] held me out as [Child]'s father. Prior to and even after our divorce, we discussed adoption and [Mother] gave me her consent to adopt[.]

Former Stepfather's Brief in Support of Adoption Petition, 3/11/21, Exhibit G.

In 2016, Former Stepfather and Mother executed a Post-Nuptial Agreement which included provisions regarding custody and child support of Child (as well as their biological child born during their marriage). *Id.* at Exhibit C, ¶¶ 4-5. The Post-Nuptial Agreement states: "The parties shall share legal custody of [the children]. … The parties agree [Former Stepfather] shall have shared physical custody of the children when [Former Stepfather]

returns from Italy."[2] *Id.* at Exhibit C, ¶ 4. Former Stepfather exercised custody of pursuant to the terms of the Post-Nuptial Agreement and maintained regular contact with Child through video calls. *Id.* at Exhibit G. In June 2020, he filed a petition seeking partial physical custody of Child.[3] *Id.*

On June 2, 2020, Mother and Current Stepfather filed a petition to terminate the parental rights of Child's biological father. The trial court appointed counsel to represent Child in the termination proceedings. On December 14, 2020, the court granted the petition and terminated the parental rights of biological father.

In February 2021, Former Stepfather and Current Stepfather (joined by Mother), filed competing petitions to adopt Child. By opinion and decree entered March 31, 2021, the trial court dismissed Former Stepfather's petition. The trial court reasoned:

> In this case, [Mother]'s rights are intact. She is remarried and her husband, [Current Stepfather,] wishes to adopt[,] and [Mother] has consented to such. Given these facts, the court cannot … find that consent of the surviving natural mother is not required and bestow an ex-husband/stepfather the right to proceed in an adoption, **even though he may have "*in loco parentis*" status**.[4]

---

[2] Former Stepfather is in the United States Air Force and was on active duty in Italy at the time.

[3] The status of the petition is unclear from the record.

[4] A person stands *in loco parentis* with respect to a child when he or she "assum[es] the obligations incident to the parental relationship without going
*(Footnote Continued Next Page)*

Trial Court Opinion, 3/31/21, at 3-4 (emphasis and footnote added). That same day, the trial court held an adoption hearing and granted Current Stepfather's petition to adopt. This timely appeal followed.[5]

In a memorandum filed February 14, 2022, a divided panel of this Court affirmed. On February 22, 2022, Former Stepfather filed an application for reargument *en banc*. On March 30, 2022, this Court granted Former Stepfather's application for reargument and withdrew the original memorandum. Pursuant to Pa.R.A.P. 2140, Former Stepfather filed a supplemental brief expanding on the issue of Child's right to counsel and raising two new issues. Mother and Current Stepfather filed a reply brief. The case was argued before this Court *en banc* on September 14, 2022.

Former Stepfather raises seven issues in his original brief, and two additional issues in his supplemental brief. Our review of the following three issues is dispositive:

[1.] Whether the trial court erred and abused its discretion in dismissing Appellant's petition for adoption on the basis that Appellant lacked standing[?]

[2.] Whether the trial court erred in failing to rule on Appellant's [p]etition to [i]ntervene?

[3.] Whether the trial court abused its discretion in failing to appoint legal counsel and/or [a] guardian *ad litem* [GAL] for the

---

through the formality of a legal adoption." ***K.X. v. S.L.***, 157 A.3d 498, 505 (Pa. Super. 2017) (citations omitted).

[5] Former Stepfather and the trial court have complied with Pa.R.A.P. 1925.

- 4 -

[now twelve-year]-old [C]hild upon receiving two competing adoption petitions?

Former Stepfather's Original Brief at 4 (reordered).

We review Former Stepfather's issues in the context of the Pennsylvania Adoption Act, 23 Pa.C.S.A. § 2101, *et seq*. The Pennsylvania Supreme Court has pronounced:

> [A]doption is purely a statutory right, unknown at common law. ***In re Adoption of E.M.A.***, 487 Pa. 152, 409 A.2d 10, 11 (1979). To effect an adoption, the legislative provisions of the Adoption Act must be strictly complied with. [***Id.***] Thus, our analysis is focused entirely on the relevant statutory provisions.
>
> The Adoption Act provides that "[a]ny individual may be adopted, regardless of his age or residence." 23 Pa.C.S. § 2311. Similarly, "[a]ny individual may become an adopting parent." [***Id.***] § 2312. Section 2701 sets forth the requisite contents of a petition for adoption filed by a prospective adoptive parent[.]

***In re Adoption of R.B.F.***, 803 A.2d 1195, 1199 (Pa. 2002).

> A petition for adoption shall set forth:
>
> …
>
> (7)   That all consents required by [S]ection 2711 (relating to consents necessary to adoption) are attached as exhibits or the basis upon which such consents are not required.

23 Pa.C.S.A. § 2701(7).

With respect to consent,

> (a) **General rule.--** Except as otherwise provided in this part, consent to an adoption shall be required of the following:
>
> (1)   The adoptee, if over 12 years of age.
>
> (2)   The spouse of the adopting parent, unless they join in the adoption petition.

(3) The parents or surviving parent of an adoptee who has not reached the age of 18 years.

**(b) Husband of natural mother.--** The consent of the husband of the mother shall not be necessary if, after notice to the husband, it is proved to the satisfaction of the court by evidence, including testimony of the natural mother, that the husband of the natural mother is not the natural father of the child. Absent such proof, the consent of a former husband of the natural mother shall be required if he was the husband of the natural mother at any time within one year prior to the birth of the adoptee.

23 Pa.C.S.A. § 2711(a)(1-3) and (b).

The Adoption Act further addresses appointment of counsel:

**(a) Child.**-- The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. **The court may appoint counsel or a guardian *ad litem* to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child**. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S.A. § 2313(a) (emphasis added).

We recognize "the interpretation and application of a statute is a question of law that compels plenary review to determine whether the court committed an error of law." ***Wilson v. Transport Ins. Co.***, 889 A.2d 563, 570 (Pa. Super. 2005). "As with all questions of law, the appellate standard of review is *de novo* and the appellate scope of review is plenary." ***In re Wilson***, 879 A.2d 199, 214 (Pa. Super. 2005) (*en banc*).

We review an adoption determination for an abuse of discretion. ***In re K.D.***, 144 A.3d 145, 151 (Pa. Super. 2016). This Court will not find an abuse

of discretion "merely because a reviewing court would have reached a different conclusion." *Id.* (citation omitted). Rather, "[a]ppellate courts will find a trial court abuses its discretion if, in reaching a conclusion, it overrides or misapplies the law, or the record shows that the trial court's judgment was either manifestly unreasonable or the product of partiality, prejudice, bias or ill will." *Id.* (citation omitted).

Moreover,

> [i]n both custody and adoption matters, our paramount concern is the best interests of the child. This "best interests" determination is made on a case-by-case basis, and requires the weighing of all factors[,] which bear upon a child's physical, intellectual, moral, and spiritual well-being.

*In re Adoption of A.S.H.*, 674 A.2d 698, 700 (Pa. Super. 1996) (citations omitted). *See also* 23 Pa.C.S.A. § 2902(a).

In his first issue, Former Stepfather maintains the trial court erred and abused its discretion in dismissing "[Former Stepfather's] petition for adoption on the basis that [he] lacked standing." Former Stepfather's Original Brief at 12. He also raises related arguments that the trial court erred in failing to rule on his petition to intervene in Current Stepfather's adoption case and in granting Current Stepfather's petition to adopt. *Id.* at 31. Former Stepfather contends he has standing to intervene and adopt because he "stands *in loco parentis* to [Child]." *Id.* at 13; *see also id.* at 32. Former Stepfather argues our decision in *In the Interest of N.S.*, 845 A.2d 884 (Pa. Super. 2004) supports his position. *Id.* He states:

- 7 -

[Former Stepfather] was [C]hild's stepfather, raised [C]hild, and financially supported [C]hild. Following the divorce of [Former Stepfather] and [M]other in January 2017, and with [M]other's agreement, [Former Stepfather] continued to share legal and physical custody rights of [C]hild[.] … It is undisputed that [Former Stepfather] stood *in loco parentis* to [Child] since birth and continued to stand *in loco parentis* at the time of the trial court's decision[.]

*Id.* at 14.

Former Stepfather also contends the trial court abused its discretion "in finding [he] could not proceed to a hearing on the merits without the express consent of mother, the existing legal parent." *Id.* at 15. *See also id.* at 15-24. Lastly, he maintains that because he stands *in loco parentis*, Current Stepfather "lacked standing to proceed with his petition absent [Former Stepfather's] consent." *Id.* at 24.

The trial court explained its disagreement as follows:

If the facts argued by [Former Stepfather] were found to be true and for the purposes of this matter, they are considered so, he has established that he stands *in loco parentis* to [Child]. A person who acts in loco parentis:

… puts himself into the situation of assuming the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of *in loco parentis* embodies two ideas: first, the assumption of a parental status, and second, the discharge of parental duties.

*In re: Wims*[, 685 A.2d 1034, 1036 (Pa. Super. 1996] (citations omitted). This will certainly be beneficial to [Former Stepfather] in his custody matter.

In this case, the [Mother's] rights are intact. She is remarried and her husband, [Current Stepfather,] wishes to adopt and [Mother] has consented to such. Given these facts, this Court cannot

expand **In re Adoption J.E.F.**[, 902 A.2d 402 (Pa. 2006)] and find that consent of the surviving natural mother is not required and bestow an ex-husband/step-father the right to proceed in an adoption, even though he may have "*in loco parentis*" status.

Trial Court Opinion, 3/29/21, at 3-4. We are constrained to disagree.

On October 19, 2022, the Pennsylvania Supreme Court decided **In re KNL**, --- A.3d ---, 2022 WL 10719028 (Pa. Oct. 19, 2022).[6] The Supreme Court "granted discretionary review to examine whether the lower courts applied appropriate standards for evaluating, and rejecting, a former caregiver's asserted *in loco parentis* status for purposes of standing to intervene in a proceeding to adopt a child in the custody of a foster care agency, pursuant to the Adoption Act." **Id.** at *1. Ultimately, the Supreme Court determined the trial court had misapplied the law, and the "proper standing inquiry reviews whether a non-foster-parent third party seeking to pursue a petition to adopt a child in the custody of an agency has a genuine and substantial interest in formalizing a permanent parental relationship with the adoptee-child, which surpasses the interest of ordinary, unrelated strangers." **Id.** at *18.

_____

[6] Although **KNL** was decided after Appellant filed this appeal, it is well settled that "Pennsylvania appellate courts apply the law in effect at the time of the appellate decision. This means that we adhere to the principle that a party whose case is pending on direct appeal is entitled to the benefit of changes in law which occur before the judgment becomes final." **Commonwealth v. Chesney**, 196 A.3d 253, 257 (Pa. Super. 2018) (citations omitted).

This case is distinguishable insofar as there is no agency involved. The trial court found that because Mother's parental rights are intact and she consented to Current Stepfather's adoption of Child, her consent was required to confer Former Stepfather with the right to intervene. The trial court did not address "whether a non-foster-parent third party seeking to pursue a petition to adopt a child ... has a genuine and substantial interest in formalizing a permanent parental relationship with the adoptee-child ...." ***Id.***

The Pennsylvania Supreme Court observed:

> Standing relates to the capacity of an individual to pursue a particular legal action, and requires the petitioning litigant be adversely affected, or aggrieved, in some way. Traditionally, this requirement is met where an individual demonstrates he or she has a substantial interest in the subject matter of the litigation that must be direct and immediate, rather than remote, and which distinguishes his interest from the common interest of other citizens. In Pennsylvania, the doctrine of standing is a judicially-created tool intended to winnow out litigants with no direct interest in the matter, and to otherwise protect against improper parties. Consequently, where the General Assembly expressly prescribes the parties who may pursue a particular course of action in Pennsylvania courts, legislative enactments may further enlarge or distill these judicially-applied principles. Standing is a threshold issue and must be resolved before proceeding to the merits of the underlying action. As is the case in custody matters, standing within an adoption proceeding is a conceptually distinct legal question from the central, substantive issue of the child's best interests.

***K.N.L.***, 2022 WL 10719028, at *8 (citations omitted).

In addition:

> Issues of standing generally raise pure questions of law for which we employ *de novo* review of a trial court's decision. As well, a challenge to asserted *in loco parentis* status in a particular context typically involves a fact-intensive inquiry and may implicate mixed

questions of law and fact. Where factual findings and credibility determinations are at issue, we will accept them insofar as they are supported by the record. In matters arising under the Adoption Act, as well as appeals of child custody and dependency decisions, our plenary scope of review is of the broadest type; that is, an appellate court is not bound by the trial court's inferences drawn from its findings of fact and is compelled to perform a comprehensive review of the record for assurance the findings and credibility determinations are competently supported.

*Id.* at *5.

In *K.N.L.*, the child was in the custody of the Philadelphia Department of Human Services (DHS), and the parental rights of the child's biological parents were terminated, as were the custodial and visitation rights of the child's former caregiver. *Id.* at *1. When the child's foster parents sought to adopt the child, the biological aunt intervened, and the foster parents withdrew their adoption petition. *Id.* Thereafter, the former caregiver's son (who became the appellant), sought to intervene.[7] *Id.* at *2. The appellant filed a petition to adopt the child, claiming *in loco parentis* status. *Id.* Following a hearing, the juvenile court concluded the appellant lacked standing because he was not currently assuming parental obligations of the child, and did not have the written consent of DHS, who was the child's current legal guardian. *Id.* at *4. This Court affirmed the juvenile court. *Id.* at *5. In granting allowance of appeal, the Pennsylvania Supreme Court focused on the juvenile court's denial of the appellant's petition "to intervene in the adoption

---

[7] He was also the biological mother's former "romantic partner and longtime friend." *Id.* at *2.

- 11 -

of the child despite uncontroverted proof that [he] stood *in loco parentis* for the subject child by assuming the role of parent and discharging parental duties[.]" *Id.* (citation omitted).

Ultimately, the Pennsylvania Supreme Court rejected the juvenile court's conclusion that the appellant's current *in loco parentis* status and DHS consent was necessary to establish appellant's standing. *Id.* at *9, *11. The High Court observed that the legal basis for the "general rule restricting standing" to individuals currently *in loco parentis* was "not apparent," and "decline[d] to recognize [prior Superior Court cases] as the source of any requirement that *in loco parentis* status must be current to establish standing." *Id.* at *9. With respect to the Adoption Act's consent requirements, the Court concluded that in its prior decisions, it

> squarely rejected any purported relationship between the threshold issue of a party's standing, and the substantive impact of the [Adoption] Act's consent requirements. Also [the Supreme Court] rejected … that an agency's refusal of the consent to adopt … could still bar standing for everyone else. Instead, with respect to the Section 2711 consent requirements, [our Supreme] Court [had previously] unanimously declared this provision, by its plain language, never purports to speak to standing, much less does the provision suggest that the consequence of withholding consent is to eliminate standing. Instead, the [Adoption] Act contemplates the adoption court, not the agency, will perform an analysis of a conferred or withheld consent of a relevant party as part of an overall substantive evaluation of the child's best interests in the merits of proceeding on an adoption petition, and this **substantive** inquiry necessarily follows, but has no relation to, the **preliminary** inquiry into standing. We reiterate: the agency's withheld consent is not a bar to standing and has no part in that analysis; rather, it is an issue to be considered subsequently and substantively within the paramount context of the child's best

> interests, her individual needs and welfare, in relation to the petition.
>
> ….
>
> Accordingly, nothing in the [Adoption] Act precludes any party from filing a petition for adoption, nor is there anything to preclude the trial court from entertaining multiple adoption petitions and then determining the best interests of the child.

*Id.* at *11-12 (citations and footnote omitted, emphasis in original).

After determining that the juvenile court erred in its analysis of appellant's standing, the Court concluded:

> A proper standing inquiry reviews whether a non-foster-parent third party seeking to pursue a petition to adopt a child in the custody of an agency **has a genuine and substantial interest in formalizing a permanent parental relationship with the adoptee-child, which surpasses the interest of ordinary, unrelated strangers.**

*Id.* at *18 (emphasis added).

We recognize the lack of agency involvement in this case. Nonetheless, we conclude that ***K.N.L.*** is applicable. In determining that Former Stepfather lacked standing, the trial court focused on the absence of Mother's consent. Trial Court Opinion, 3/31/21, at 3-4 (stating the trial court could not "find that consent of the surviving natural mother is not required and bestow an ex-husband/step-father the right to proceed in an adoption, even though he may have '*in loco parentis*' status."). This was error. Accordingly, we vacate the trial court's decree holding that Former Stepfather lacked standing to intervene and granting Current Stepfather's petition to adopt.

Former Stepfather additionally claims the trial court erred by failing to appoint legal counsel and/or a guardian *ad litem* (GAL) for Child. **See** Former Stepfather's Original Brief at 35-39; Former Stepfather's Supplemental Brief at 2-11.

Prior to reaching the merits of this claim, we address whether it is properly before us. In **In re Adoption of K.M.G.**, 240 A.3d 1218 (Pa. 2020), our Supreme Court held the issue of appointment of counsel for a child in contested termination cases was not waivable and could be raised *sua sponte* by an appellate court. While **K.M.G.** addressed appointment of counsel in termination proceedings, **see id.** at 1223, we find its analysis instructive to the circumstances presented in this case. The Supreme Court emphasized:

> [C]hildren do not have … the ability or opportunity to assert the denial of their right to counsel. Given the critical importance and permanency of termination proceedings, as well as children's inability to navigate the termination process themselves, we hold that appellate courts should engage in *sua sponte* review to determine if orphans' courts have appointed counsel to represent the legal interests of children in contested termination proceedings, in compliance with Subsection 2313(a).

*Id.* at 1235. **See also In re T.S.**, 192 A.3d 1080, 1087 (Pa. 2018) (issue of whether orphans' court erred in not appointing counsel for children is non-waivable where "[t]here was no attorney representing solely the children's legal interests who could have raised their rights in the trial court, and the children plainly could not have done so themselves."); **In the Interest of D.N.G.**, 236 A.3d 361, 365-66 (Pa. Super. 2020) (declining to find waiver

where biological mother raised challenge to effectiveness of child's counsel for first time on appeal). Consistent with the foregoing, we decline to find waiver.

Instantly, the trial court appointed counsel to represent Child in the termination proceedings involving Child's biological father, who had no relationship with Child. *See* Order, 10/2/20. The trial court did not appoint counsel for Child in the adoption proceedings, despite finding that during Former Stepfather and Mother's "relationship and marriage, [Former Stepfather] was [Child's] only father figure." Trial Court Opinion, 3/31/21, at 1.

In addition, Child is over the age of 12 and must consent to adoption. 23 Pa.C.S.A. § 2711(a)(1). The record reflects Child has a lifelong relationship with Former Stepfather. The record is less clear about Child's relationship with Current Stepfather. *See* Former Stepfather's Brief in Support of Adoption Petition, 3/11/21, at Exhibits B, E-G; Trial Court Opinion, 3/31/21, at 1-2. Former Stepfather shares legal and physical custody of Child and pays child support. Former Stepfather's Brief in Support of Adoption Petition, 3/11/21, at Exhibit C.

The trial court does not reference Child's views about adoption, or examine whether adoption is in Child's best interests. *See A.S.H.*, 674 A.2d at 700; 23 Pa.C.S.A. § 2902(a). It is unclear whether or to what extent Child has been advised of the implications of adoption, or how adoption by Current Stepfather could impact Former Stepfather's custody. *See K.N.L.*, 2022 WL

- 15 -

10719028, at *13 (observing that the rights of a person *in loco parentis* to custody or visitation "automatically" terminate upon adoption). Mother and Former Stepfather have a biological child, but the trial court does not discuss the implications of adoption with respect to the siblings. Also, there are financial benefits available to children with a parent in the military. *See* Former Stepfather's Supplemental Brief at 5. While it is unclear whether Former Stepfather's custody and child support factor in Child's eligibility for benefits, adoption by Current Stepfather would foreclose the possibility.

In *K.M.G.*, our Supreme Court observed "the critical role of a child's attorney, zealously advocating for the legal interests of the child who otherwise would be denied a voice in the [ ] proceedings." *K.M.G.*, 240 A.3d at 1234; *see also* 23 Pa.C.S.A. § 2313(a). The Supreme Court recently addressed the role of counsel for a child in termination and adoption proceedings relative to a child's preferences and best interests:

> Generally, an attorney acting as a child's legal counsel must, at a minimum, attempt to ascertain the child's preference and advocate on the child's behalf. Admittedly, that inquiry may be no simple task. First, discerning a child's preference will necessarily be a fact-intensive and nuanced process, based upon an attorney's observations and interactions with the child. Moreover, minors, as a class of individuals, fall within a wide range of ages, maturity levels, and emotional capacity that all factor into a child's ability to express a preference. As a result, ascertaining a child's preferred outcome may involve various circumstance-appropriate strategies. At one end of the spectrum, an attorney may represent an older, mature child who understands precisely what a termination proceeding entails and may articulate in clear, even binary, terms his preference for the outcome of the proceedings. By contrast, an attorney may represent a very young, less mature, child, who is unable to express any

understanding of the proceedings or articulate a preference as to their outcome.

Yet, in the middle of this range may be a child who understands to some degree what is at stake in the proceedings, and who is capable of expressing some preference, but who is unable to do so in a fully informed and articulate fashion. In these instances, an attorney must make reasonable, but at the same time prudent, efforts to discern the child's desires. And[] not only age and maturity may inform the analysis. There may be circumstances surrounding a termination proceeding that hamper determining a child's clear preference.

*In re P.G.F.*, 247 A.3d 955, 966 (Pa. 2021) (footnote omitted).

This Court has emphasized not only the importance of the appointment of counsel, but that counsel be effective in advocacy, particularly when the child is near the age where their consent is required for adoption. *See D.N.G.*, 230 A.3d at 366-68. In *D.N.G.*, DHS sought to terminate biological mother's parental rights. *Id.* at 363. The then-11-year-old child informed counsel he did not wish to be adopted; counsel relayed his position to the family court but took no further action to advocate for child. *Id.* at 366. On appeal, this Court vacated the termination of mother's parental rights and remanded based on counsel being ineffective. *Id.* at 367-68. We opined:

While legal representation in this context necessarily involves talking to the child client and reporting the child's preferences to the court, it is in no way limited to those two actions. To the contrary, … [counsel] was required to advocate on behalf of D.N.G. and provide zealous client-directed representation of D.N.G.'s legal interests.

…

We agree with [m]other's assertion that [counsel's] advocacy was inadequate.  It was [counsel's] principal obligation as legal counsel to ascertain D.N.G.'s legal interest and promote it.

…

Furthermore, counsel declined to present any legal argument in his client's favor.
…

Most importantly, [counsel] failed to cast the most meaningful legal argument in his arsenal, *i.e.*, the probability that his soon-to-be-twelve-year-old client would refuse to consent to any contemplated adoption.  Indeed, by terminating parental rights notwithstanding D.N.G.'s express desire not to be adopted, the family court risked transforming D.N.G. into an orphan without any true purpose.

In sum, based upon our review of the record, we conclude that [counsel's] representation did not satisfy the mandate of § 2313(a), because he neglected to advocate for his client's legal interest.  … [I]t is not possible for legal counsel to zealously represent his client's legal interest merely by engaging in one discussion with the child on the eve of trial and then summarizing that conversation for the family court.  Rather than simply reporting a preference to the family court, it was [counsel's] obligation to engage in client-directed advocacy on behalf of D.N.G. with regard to the child's preferred outcome.  Therefore, we hold that D.N.G. was deprived of his statutory right to counsel to advance his legal interest, a deprivation that continues in this appeal.

*Id.* at 366-67 (citations and footnote omitted).

A scenario similar to the instant matter arose in *In re: Adoption of R.A.B.*, 1364 EDA 2007 (Pa. Super. May 9, 2008) (unpublished memorandum).  The decision is non-precedential, but instructive.  In *R.A.B.*, the mother, in agreement with her partner (R.B.), conceived a child by artificial insemination.  *Id.* at 1-2.  The relationship between mother and R.B.

ended when the child was three; the mother subsequently married, and her husband sought to adopt the child. *Id.* at 2. R.B. successfully intervened in the proceedings, and after an 8-day trial, the orphans' court granted the husband's adoption petition. *Id.* R.B. appealed, and this Court vacated and remanded based on our concern that application of the Adoption Act had "eliminated" R.B.'s custodial rights. *Id.* at 7-9. We explained:

> [A]t the time the trial judge granted the petition of R.B. to adopt [the child], there were already two persons with legally enforceable parental rights. Thus, the decision of the trial court to grant R.B.'s petition to adopt [the child] either created a situation where [the child] has three legal parents, or effectively eliminated [R.B.]'s parental rights without due consideration for the consequences. The failure to address those consequences is of particular significance to any consideration and resolution of the best interests of [the child], since, **as recognized by counsel appointed to represent the interest of [the child]**, the experts produced by the respective parties were adamant that [R.B.]'s relationship with [the child] should be maintained.

*Id.* at 9 (emphasis added).

Like the parties in *R.A.B.*, Former Stepfather and Mother have a custody agreement. However, unlike the child in *R.A.B.*, Child in this case is over the age of 12 and does not have counsel. Mindful of the "effective[] eliminat[ion of Former Stepfather's] parental rights without due consideration for the consequences," *In re Adoption of R.A.B.* at 9, we conclude that legal representation is warranted for the advocacy of Child's preferences and best interests. *In re P.G.F., supra*.

For the above reasons, we are constrained to vacate the trial court's decree dismissing Former Stepfather's petition to intervene and adoption

petition and granting Current Stepfather's adoption petition. In addition to remanding for a determination of Former Stepfather's standing, we remand for appointment of counsel for Child, to "serve the critical role of a child's attorney, zealously advocating for the legal interests of the child." **K.M.G.**, **supra** at 1234. We further recognize the Pennsylvania Supreme Court's holding that while one attorney may act as GAL and legal counsel, the attorney may only do so when "the child's legal interests [*i.e.*, the child's preferred outcome] do not conflict with the attorney's view of the child's best interests." **Id.** at 1224. Thus, the trial court may appoint a GAL and legal counsel if it determines that Child's preferences are contrary to counsel's view of Child's best interests.

Decree vacated. Case remanded for further proceedings. Jurisdiction relinquished.

President Judge Panella, Judges McLaughlin and McCaffery join the opinion.

Judges Nichols and Sullivan concur in the result.

Judge Dubow files a concurring opinion in which President Judge Panella, Judges Nichols and Sullivan join.

Judge Kunselman files a dissenting opinion in which Judge Olson joins.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/19/2023