556 A.2d 419

In re Joseph MITCH Sherry Dean and Martin Dean

v.

## BUCKS COUNTY CHILDREN AND YOUTH SOCIAL SERVICE AGENCY.

**Appeal of Sherry DEAN and Martin Dean.**

Superior Court of Pennsylvania.

Argued Sept. 28, 1988.

Filed March 29, 1989.

Donald B. Swope, York, for appellants.

Joshua Z. Goldblum, Levittown, for appellee.

Before MONTEMURO, POPOVICH and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from the order below dismissing appellants' petition for custody. The sole issue raised for our review is one of first impression: whether prospective adoptive parents have standing to contest the decision of the legal custodian, a child welfare agency, to remove from their custody a child placed with them for adoption. For the reasons set forth below, we conclude that prospective adoptive parents do have standing to petition for custody and, accordingly, we reverse the order below and remand for proceedings consistent with this Opinion.

The child in question, Joseph Mitch, was born in August, 1974. On July 12, 1983, Joseph was found to be a dependent child and was placed in the temporary legal custody of the Bucks County Children and Youth Social Services Agency [hereinafter "Children and Youth"]. On January 9, 1986, in response to a petition by Children and Youth, the parental rights of Joseph's biological parents were terminated.

Thereafter, on March 21, 1986, Children and Youth placed Joseph with appellants, Sherry and Martin Dean, for adoption. This placement was obtained by Children and Youth Services through Welcome House, which acted as an intermediary between appellants and Children and Youth. Prior to Joseph's placement, appellants had entered into a service agreement with Welcome House. The agreement listed the responsibilities of Welcome House as an intermediary adoption placement service and those of appellants as "prospective adoptive" parents. Appellants also entered into an "Adoptive Placement Agreement" with Children and Youth.[1] Joseph remained with appellants continuously until

1. This agreement, which was signed at the time of Joseph's placement, provided:

In becoming adoptive parents we understand and agree that:

May 5, 1987, at which time he was admitted to Philhaven Hospital as an inpatient for psychological evaluations. Joseph was admitted by appellants at the behest of Children and Youth.

On June 5, 1987, Children and Youth terminated Joseph's placement with appellants and notified appellants of the termination by letter. In response, appellants requested a hearing with Children and Youth regarding its decision. This request was rejected.[2]

On July 7, 1987, appellants filed a Petition to Show Cause why Joseph should not be returned to them and the Or-

1. The child, Joseph Mitch, whom we are taking into our home, is, until final adoption takes place, the ultimate responsibility of the Bucks County Children and Youth Social Services Agency.

2. We are responsible for all day-to-day decisions regarding Joseph Mitch, and we assume all financial responsibility for him[ ].

3. The placement period, which is in accordance with Pennsylvania law, extends for a minimum of six months from date of placement. This period which is designed to be of mutual benefit to Joseph Mitch and to us, provides a time to work toward our best possible adjustment, with the help of the social worker.

If during this time we wish to request Joseph Mitch['s] removal from our home, we are free to do so, but understand we will not receive reimbursement for any expenses incurred in behalf of Joseph Mitch.

4. If we need to take Joseph Mitch out of state for any reason during the placement period, we will notify the Agency immediately of the situation.

5. Supervision of the placement will be provided by Welcome House and periodic reports will be submitted to Bucks County Children and Youth Social Services Agency.

2. The request was rejected based upon 55 Pa.Code § 3700.73(a)(5). Section 3700.73(a)(5) provides:

(a) Foster parents may appeal the relocation of a child from a foster family home except under the following conditions:

. . . . .

(5) an investigation of a report of alleged child abuse indicates the need for protective custody removal to protect the child from further serious physical or mental injury, sexual abuse, or serious physical neglect as defined in Chapter 3490 (relating to child protective services—child abuse).

55 Pa.Code § 3700.73(a)(5) (August 1985).

We note that, on July 20, 1987, the Cumberland County Child Protective Services had filed a report of "indicated" child abuse against appellants. Appellants filed a timely appeal from this determination with the Department of Public Welfare; this matter was still pending at the time this appeal was filed.

phans' Court entered a rule to show cause upon Children and Youth. On August 28, 1987, the case was transferred to the Juvenile Court Division of the Court of Common Pleas. Children and Youth then filed an answer to appellants' petition as well as a motion to dismiss the petition for lack of standing. The parties filed a joint stipulation of facts and separate memoranda of law on their respective positions. On February 26, 1988, the court dismissed the petition based on its determination that appellants lacked standing to petition for a return of custody. This appeal followed.

The reasoning behind the trial court's ruling was as follows. The court first observed that, although the precise question of prospective adoptive parents' standing had never been decided, this Court has held that *foster parents* do not have standing to seek termination of parental rights, *see In re Adoption of Crystal D.R.*, 331 Pa.Super. 501, 480 A.2d 1146 (1984) (construing Adoption Act), adoption, *see In re Adoption of S.C.P.*, 364 Pa.Super. 257, 527 A.2d 1052 (1987) (construing Adoption Act), or custody, *see Priester v. Fayette County Children & Youth Services*, 354 Pa.Super. 562, 512 A.2d 683 (1986). The court then noted that it was impossible for appellants to adopt Joseph because Children and Youth, as Joseph's custodian, would first have to consent, and "[i]t is clear on this record that Children & Youth will no longer consent to this adoption." Trial Court Opinion at 6. Because adoption was an impossibility, the court reasoned that "there is no basis upon which to distinguish between [appellants'] status as previously intended adoptive parents or as foster parents" and thus concluded that appellants lacked standing.

Appellants contend that the trial court erred in equating them with foster parents for purposes of standing. Appellants note that prospective adoptive parents, unlike foster parents, are urged to form long-term emotional bonds with the children placed in their care. Appellants argue that the nature of prospective adoptive placements is sufficient to distinguish them from the foster parents in *Priester*, and

thus they should have standing to seek judicial review of an agency's decisions regarding custody.[3]  We agree.

As a general matter, to resolve an issue of standing, we must determine,

> whether the person seeking relief is adversely affected or "aggrieved" in any way by the matter which he seeks to challenge through the judicial process.  To have standing, the adversely affected party must allege an immediate, direct and substantial injury.

*In re Adoption of B.E.W.G.*, 355 Pa.Super. 554, 560, 513 A.2d 1061, 1064 (1986) (citation omitted).  With specific regard to custody cases, we note that there appears to be a conflict in the case law in this Court concerning the standing of foster parents.  In *Stapleton v. Dauphin County Child Care Service*, 228 Pa.Super. 371, 324 A.2d 562 (1974), we held that foster parents do have standing to protest an agency's decision to remove a foster child from their home.  *Id.*, 228 Pa.Superior Ct. at 380–81, 324 A.2d at 567–68.  In *Stapleton*, as here, the child had been declared dependent, and the child care agency had legal custody of him.  In resolving the question of standing, we turned to the Juvenile Act, then located at 11 P.S. § 50–101 et seq.  We noted that § 50–302 of the Act provided that a "proceeding" under the Act could be "commenced" by, *inter alia,*

> the filing of a petition as provided in this act.  The petition and all other documents in the proceeding shall be entitled "In the interest of _____, a minor," and shall be captioned and docketed as provided by rule of the Supreme Court.

11 P.S. § 50–302 (repealed).  228 Pa.Super. at 378–79, 324 A.2d at 566.  Based on this passage, we reasoned that the foster parents' petition, although incorrectly titled, nevertheless commenced a proceeding.  *Id.*, 228 Pa.Superior Ct.

---

**3.**  Appellants did not timely file a report of intention to adopt, as required by § 2531 of the Adoption Act, apparently because of their attorney's oversight.  *See* Stipulation at 3–4, para. 12.  We note, however, that it is undisputed that Joseph was placed with appellants for "the purpose of adoption."  *Id.* at 1, para. 4.  Thus, this failure should not affect appellants' status as prospective adoptive parents.

at 379, 324 A.2d at 566. The next question was whether the petition had been filed "as provided." To answer this question, we looked to § 50–314 of the Act, which stated:

A petition, which shall be verified and may be on information and belief, may be brought by any person including a law enforcement officer. It shall set forth plainly:

(1) The facts which bring the child within the jurisdiction of the court and this act, with a statement that it is in the best interest of the child and the public that the proceeding be brought and, if delinquency is alleged, that the child is in need of treatment, supervision, or rehabilitation....

11 P.S. § 50–314 (repealed). Based on this section, we reasoned that "[i]t is difficult to see how standing could have been defined any more broadly. [The foster child] was within the jurisdiction of the court below. The [foster parents] are 'any persons.' They therefore had standing to file a petition raising the issue of who should have custody of [the child]." 228 Pa.Super. at 380, 324 A.2d at 567.[4,5]

4. The Juvenile Act at issue in *Stapleton* has been repealed and a new Juvenile Act has been enacted, *see* 42 Pa.C.S.A. §§ 6301–6355 (effective June 27, 1978). The relevant provisions in the present statute governing both commencement of proceedings, *see id.* § 6321(a)(3), and the contents of a petition, *see id.* § 6334, do not differ in any material respect from the corresponding provisions in the former Act.

5. *Stapleton* was cited with approval in a 1982 case that involved prospective adoptive parents. *In Matter of Adoption of Sturgeon,* 300 Pa.Super. 92, 445 A.2d 1314 (1982), the young child had been placed in two different adoptive families by an agency with undisputed legal custody of the child. The agency ordered the second family to return the child to the agency; the family refused and petitioned for adoption. On appeal, the agency claimed, *inter alia,* that their placement agreement with the parents mandated the return of the child on demand. In rejecting this claim, Judge Montemuro, writing for the panel majority, stated:

It has long been settled in this Commonwealth that a child is not a chattel, to be finally disposed of by agreement among parties. The *Stapleton* court remarked rather sharply that:

One would expect the [agency] to be aware that such a contract is voidable by the courts when the best interests of the child conflict with it.

We reiterate at this time that an agreement of this is voidable. Persons standing *in loco parentis* to a child *are not bound by such an*

In *Priester v. Fayette County Children and Youth Services*, 354 Pa.Super. 562, 512 A.2d 683 (1986), a panel of this Court considered the same question presented in *Stapleton* and reached a different conclusion. The child in *Priester* had been placed with the foster parents for a period of two years. The agency then had the child transferred to another foster home where his brother resided. The agency denied the appellants' request for the return of the child. On appeal, the panel held that the foster parents did not have standing to contest the agency's custody of the child. *Id.*, 354 Pa.Superior Ct. at 566, 512 A.2d at 685. We should note that, in reaching this conclusion, the *Priester* panel did not make reference either to *Stapleton* or to the Juvenile Act.

The apparent conflict between *Stapleton* and *Priester* would present a difficulty to our resolution of this appeal only if we agreed with the trial court and appellee that, for purposes of standing, prospective adoptive parents are indistinguishable from foster parents. A close reading of the panel's rationale in *Priester*, however, convinces us that *Priester* is a limited exception to the otherwise broad standing provisions in the Juvenile Act, and thus should not control our analysis of the standing of prospective adoptive parents.

*Priester* recognized the fundamental distinction between foster placement and adoptive placement. In this regard, the panel observed that,

Foster care has been defined as a " 'child welfare service which provides substitute family care for a planned period for a child when his own family cannot

*agreement when they sincerely feel that it no longer serves the child's best interests.*

*Id.*, 300 Pa.Super. at 107, 445 A.2d at 1321. The majority added that, *Clearly, where foster parents have been held to the right to petition for custody of a child, pre-adoptive parents cannot have less right to protect the interests of the child entrusted to them as a prospective son or daughter and heir.*

*Id.* (emphasis added). The majority then concluded that the trial court properly scheduled hearings on the prospective adoptive parents' petition before permitting removal of the child. *Id.*, 300 Pa.Superior Ct. at 108, 445 A.2d at 1322.

care for him for a temporary or extended period, and when adoption is neither desirable nor possible.' " *Smith v. Organization of Foster Families*, 431 U.S. 816, 823, 97 S.Ct. 2094, 2099, 53 L.Ed.2d 14 (1977), citing Child Welfare League of America, Standards for Foster Family Care Service 5 (1959).

The distinctive features of foster care are first, " 'that it is care in a *family*, it is noninstitutional substitute care,' " and second, " 'that it is for a *planned* period—either temporary or extended. This is unlike adoptive placement which implies a *permanent* substitution of one home for another.' " 431 U.S. at 824, 97 S.Ct. at 2099, citing A. Kadushin, Child Welfare Services 355 (1967). (Emphasis in original).

\* \* \* \* \* \*

The singular focus of our review is one of standing for foster parents who seek to gain custody of a foster child formerly in their care. By its very nature, the foster parent/foster child relationship " 'implies a warning against any deep emotional involvement with the child since under the given insecure circumstances this would be judged as excessive.' " *In re Adoption of Crystal D.R.*, 331 Pa.Super. 501, 510, 480 A.2d 1146, 1151 (1984), quoting J. Goldstein, A. Freud, and A. Solnit, *Beyond the Best Interests of the Child* 24 (1973).

354 Pa.Super. at 564–65, 512 A.2d at 684–85. Because foster placement, unlike adoptive placement, is temporary in nature, and because foster parents are forewarned of the temporary nature of the placement, the court concluded that foster parents do not have standing to contest an agency's custody of a child. *Id.*, 354 Pa.Superior Ct. at 566–67, 512 A.2d at 685.

In light of the rationale detailed above, *Priester* is perhaps best understood as a policy exception to the Juvenile Act's standing provisions, premised on the unique nature of foster placement. In other words, *Priester* stands for the proposition that, because foster parents have neither permanent custody of a child nor an expectation of permanent

custody, the legal custodian's decision regarding who should have possession of the child does not cause the type of direct and substantial injury to foster parents that should be challenged through the judicial process.

A legal custodian's decision regarding a *prospective adoptive parent's* possession of a child, however, causes a very different type of injury. As *Priester* noted, adoptive placement *implies* a permanent substitution of one home for another. 354 Pa.Super. at 564, 512 A.2d at 683. Thus, prospective adoptive parents, unlike foster parents, have an expectation of permanent custody which, though it may be contingent upon the agency's ultimate approval, is nevertheless genuine and reasonable. Because of this expectation of permanency, prospective adoptive parents are encouraged to form emotional bonds with the child from the first day of the placement. By removing the child from the care of the prospective adoptive parents, the agency forecloses the possibility of adoption. In light of the expectation of permanent custody that attends an adoptive placement, an agency's decision to remove a child constitutes a direct and substantial injury to prospective adoptive parents. Because prospective adoptive parents, unlike foster parents, suffer a direct and substantial injury when an agency removes a child from them, we see no reason in law or policy why we should limit their standing to sue for custody.

We find further support for our conclusion by noting that other jurisdictions have determined that prospective adoptive parents have standing to contest a child care agency's decision to remove a child from their care. In *In re Thomas Joseph*, 420 A.2d 85 (R.I.1980), the agency removed the child from prospective adoptive parents after a case worker became concerned with their suitability as adoptive parents. The prospective adoptive parents contested the agency's decision, and the lower court ordered the agency to return the child to them. On appeal, the agency argued that the prospective adoptive parents lacked standing to contest the removal of the child from their home. In

rejecting this argument, the Supreme Court of Rhode Island reasoned as follows:

> We have stated many times over the past six years that the proper inquiry in resolving an issue of standing is whether the party seeking judicial review has suffered an "injury in fact," either economic or otherwise, as a result of the statute or action in dispute.... We have emphasized that the "injury in fact" need not be substantial.... As long as the person seeking judicial review has suffered an injury, he has the requisite personal stake in the outcome of the litigation to confer standing....
>
> In the present case there is no dispute that [the child] was placed with the Pelletiers [the prospective adoptive parents] as a prospective adopted child and that the [agency] subsequently removed him from their home. Although the Pelletiers may not have been entitled to the permanent custody of [the child] prior to filing an adoption petition, ... the removal of the child from their care, which would have effectively foreclosed the possibility of adoption for them, constituted an injury in fact. Having been thus injured by the [agency's] action, the Pelletiers had standing to contest the action in the Family Court.

*Id.* at 88–89 (citations omitted).

The Supreme Court of Utah reached a similar conclusion in *In the Interest of A.H.,* 716 P.2d 284 (Utah 1986). In *A.H.,* the juvenile court ordered the removal of the child from her prospective adoptive parents based upon allegations of mistreatment and neglect. The prospective adoptive parents protested the order, and the juvenile court ordered the child care agency to return the child. On appeal, the agency argued that the prospective adoptive parents had no standing to petition for restoration of custody. The Supreme Court of Utah rejected this argument, noting that:

> Traditional standing criteria require that the interests of the parties be adverse and that the party "seeking relief have a legally protectible interest in the controversy."
> ... Although parents are the only persons with a legally

*vested* interest in the custody of a child, ... a child's prospective adoptive parents do have a legally protectible interest. Although [the prospective adoptive parents] may not be legally entitled to permanent custody prior to finalization of an adoption petition, the actions of the juvenile court could effectively foreclose the possibility of adoption for them. Therefore, having filed a petition for the adoption of [the child] and having been ordered by the court to pay for her expenses, the [prospective adoptive parents] have a legal interest sufficient to confer standing to petition for restoration of custody.

*Id.* at 286 (citations omitted).

Turning now to the facts in the instant case, a review of the petition filed by appellants convinces us that they clearly had standing under the Juvenile Act to petition for custody of Joseph. First, it is undisputed that Joseph had been declared dependent, *see* Stipulation at 1, para. 2, and thus he was within the jurisdiction of the juvenile court below. *See* 42 Pa.C.S.A. § 6334(1).[6] Moreover, appellants are "any persons", *see id.*, the petition they filed was properly captioned, *see id.* § 6321(a)(3), and it stated that it was in the best interest of Joseph that he be returned to them and that they be permitted to proceed with his adoption. *See id.* § 6334(1). Because appellants had standing to file the custody petition under the terms of the Juvenile Act, and because we have concluded that there is no reason to limit their standing as a matter of policy, we must hold that the trial court erred in dismissing their petition for custody.[7]

6. We note that, because there has already been a dependency determination, this is not a case where the Juvenile Act is being misused as an alternative way to seek custody. *See, e.g. Fallaro v. Yeager,* 364 Pa.Super. 408, 421, 528 A.2d 222, 228 (1987).

7. We are aware, of course, that appellants cannot finalize an adoption of Joseph without the consent of Children and Youth. *See* 23 Pa.C. S.A. § 2711(a)(5). Thus, it is unlikely that appellants will be able to obtain relief on their petition. We note, however, that the relative *merits* of a petition in no way affect a party's *standing* to file it. *See Stapleton v. Dauphin County Child Care Service,* 228 Pa.Super. at 371, 324 A.2d at 567.

For the foregoing reasons, we reverse the order below and remand for proceedings consistent with this Opinion.

Reversed and remanded. Jurisdiction relinquished.

POPOVICH, J. files a dissenting statement.

POPOVICH, Judge, dissenting:

While I agree that this case should be remanded to the lower court for further proceedings, I respectfully dissent from the majority's decision that Sherry and Martin Dean have standing to petition for a return of "custody." The majority states that "a review of the petition filed by the appellants convinces us that they clearly had standing under the Juvenile Act to petition for custody of Joseph[,]" citing 42 Pa.C.S.A. § 6334. However, the majority's characterization of this case as one of "custody" is clearly erroneous. This is an adoption case and is therefore governed by the Adoption Act, 23 Pa.C.S.A. § 2101 *et seq.*, not the Juvenile Act, 42 Pa.C.S.A. § 6301 *et seq.* See *Matter of Adoption of Sturgeon*, 300 Pa.Super. 92, 104, 445 A.2d 1314, 1320 (1982); *Com. ex rel. Grimes v. Yack*, 289 Pa.Super. 495, 523 n. 22, 433 A.2d 1363, 1378 n. 22 (1981). By ruling that the appellant's have standing to petition for custody, the majority simply exacerbates an otherwise simple case. When a prospective adoptive parents petitions for custody of the prospective adoptee, the petitioners, in effect, are petitioning for adoption—not for custody. We must not allow petitioners to use the Juvenile Act to circumvent the Adoption Act.

The Adoption Act, § 2701, sets forth the requirements for a petition for adoption. § 2701(7) requires "all consents required by section 2711 (relating to consents necessary to adoption) are attached. . . ." As a pre-requisite to adoption, § 2711(a)(5) requires consent to the adoption by "the guardian of the person of an adoptee. . . ." Following the January 6, 1986, termination the parental rights of J.M.'s biological parents, Bucks County Children and Youth Social Services Agency ("C & YS") was named as the child's legal custodian. C & YS's opposition to this petition demonstrates an

unequivocal refusal to consent to a future adoption of J.M. by the appellants. However, the *actual* legal custody of J.M. is vested in the Commonwealth with C & YS and the court simply acting as the State's agent. See *Sturgeon*, 445 A.2d at 1321–22. Thus, the appellant's only hope for becoming adoptive parents lies in a finding by the lower court, following a full hearing, that C & YS is wrongfully withholding its consent to the adoption. See *In re Adoption of E.M.A.*, 487 Pa. 152, 409 A.2d 10 (1979), appeal dismissed, 449 U.S. 802, 101 S.Ct. 46, 66 L.Ed.2d 6 (1980) (courts have no authority to decree an adoption in absence of statutorily required consents).

Accordingly, I believe the lower court and the majority should have treated the instant petition as one for adoption—not one for custody. Rather than finding that the appellant has standing to petition for custody, I would order the lower court to hold an evidentiary hearing and determine whether C & YS's refusal to consent to an adoption by the appellants is reasonable.[1]

---

**1.** I note that resolution of the pending child abuse appeal before the Department of Public Welfare is essential to resolve this issue properly. If the result of that appeal is a finding that child abuse occurred, certainly no one would dispute that C & YS is correctly withholding its consent to the adoption.