J-A18014-23

2024 PA Super 45

| IN THE INTEREST OF: S.W., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.E. AND A.E. | : | |
| | : | |
| Appellants | : | |
| | : | |
| | : | No. 22 WDA 2023 |

Appeal from the Order Entered November 8, 2022
In the Court of Common Pleas of Allegheny County Juvenile Division at
No(s): CP-02-DP-0000729-2020

BEFORE: BENDER, P.J.E., LAZARUS, J., and KUNSELMAN, J.

DISSENTING OPINION BY BENDER, P.J.E.: **FILED: March 13, 2024**

I agree with the Majority's analysis that the 'prospective adoptive parent' exception remains good law that we, as a three-judge panel, must follow. However, in my view, Appellants waived their ability to intervene under this exception. Therefore, I respectfully dissent, as I would affirm the juvenile court's order denying Appellants' motion to intervene.

The record reflects that, on August 12, 2022, CYF filed a motion for permission to place Child, citing its ongoing concerns about the well-being of Child in her current placement. On August 16, 2022, the juvenile court issued an order, directing CYF to notify Appellants of the motion and their opportunity to be heard regarding the proposed change of placement. In the same order, the juvenile court scheduled a hearing on CYF's motion for August 26, 2022. At that time, Appellants appeared with counsel, and the following occurred:

THE COURT: … [T]here is a provision of the Juvenile Act, that being Section 6336.1[1] that requires that we provide notice to a child's foster parent, pre-adoptive parent or relative providing care for the child with timely notice of basically any hearing. The court shall provide the child's foster parent, et cetera, the right to be heard at any hearing under the chapter, the chapter being the Juvenile Act. And significantly[, it] also states [that,] unless a foster parent, pre-adoptive parent or relative providing care for a child has been awarded legal custody pursuant to Section 6357[,2] nothing in this section shall give the foster parent, et cetera, or person providing care for the child legal standing in the matter being heard by the court.

So, Rule 1606[3] is the procedural rule that got us here. Section 6336.1 of the Juvenile Act is the statutory provision that governs everybody's -- well, [Appellants'] in particular [-- ]rights during this hearing. So I just wanted to make clear how I am operating today and now I will hear your preliminary matter, [Parent Advocate for Mother].

[Parent Advocate for Mother]: Thank you, Your Honor.

I'm not aware, and of course Your Honor can correct me if I am wrong, I'm not aware of any legal authority that would permit [Appellants] to have counsel actively participate in this matter. So I was just wondering if counsel for [Appellants] had any legal authority that would allow her to participate actively in today's proceedings.

THE COURT: Yes, I wonder the same thing. So I noticed that, [Appellants' counsel], that you entered your appearance on the docket. I'm not entirely certain why the system let you do that but it did. And you filed an answer to the motion. So I did want to find out in what capacity you and [Appellants] are seeking to participate today. I did not notice any motion to intervene and I'm unclear.

[Appellants' Counsel]: Your Honor, simply based on the court's order indicating that the foster parents had the opportunity to be

_____

[1] 42 Pa.C.S. § 6336.1 (Notice and hearing).

[2] 42 Pa.C.S. § 6357 (Rights and duties of legal custodian).

[3] Pa.R.J.C.P. 1606 (Modification of dependent child's placement).

heard they sought legal counsel understanding that they wish to make forward [*sic*] that the issues that they were presenting to the court today were clearly articulated and, you know, and they were able to fully present their case, Your Honor.

Their interpretation as well as my interpretation, Your Honor, of the opportunity to be heard, … allowed them the opportunity to have legal counsel should the court deem it appropriate. And based on the order I presume, Your Honor, that that would be the case.

THE COURT: … [D]o you have any legal authority that supports that?

[Appellants' Counsel]: I do not, Your Honor.

THE COURT: *Okay. So, you are not seeking to intervene in the dependency proceeding?*

[Appellants' Counsel]: *No, Your Honor.*

THE COURT: *Okay, good. You do not view [Appellants] as parties, do you?*[4]

[Appellants' Counsel]: *No, Your Honor.*

THE COURT: We are on the same page so far.

So the issue really is -- well, let me ask you this: I don't typically have anyone other than the parties seated at the table and certainly you may find it convenient but do you believe that there is some reason that you should be permitted to sit where you are right now?

[Appellants' Counsel]: Your Honor, I am (inaudible) sitting here because it was convenient for lack of a better way of phrasing it. We have no problem sitting in the back of the room until the court--

THE COURT: Okay. And, [Appellants' counsel], do I take it also while you may wish to help [Appellants] present their own

---

[4] ***See In the Interest of M.R.F., III***, 182 A.3d 1050, 1055-56 (Pa. Super. 2018) (recognizing that only parties to a dependency proceeding have the right to argue their own interests, introduce evidence, and/or cross-examine witnesses).

testimony, ***do I take it that you are not seeking to participate in the questioning of any other witnesses?***

[Appellants' Counsel]: ***No, Your Honor.***

THE COURT: ***I am correct?***

[Appellants' Counsel]: ***Yes, Your Honor.***

THE COURT: You did mention that [Appellants] brought some other people with them that they would like me to hear from. Who are they?

[Appellants' Counsel]: Your Honor, I believe that they can speak to who those individuals are. … I have their names here, I apologize, Your Honor. There are members of their church community, Your Honor, as well as an individual who has a child a similar age to [Child,] who has play dates with [Child] regularly, [and] also is an African-American. [A.E.'s (former foster father)] sister is here to speak as well regarding the nature of their relationship and their regular behavior, course of conduct.

THE COURT: Okay. So, just so you know[,] I don't know yet whether I will want to hear from those people and maybe you have warned them of that already.

So what I would like [you] to do is actually not sit at the table because I think it's important that the way we conduct the proceeding basically reflect the rights that people have. It's a big and important request to [C]hild, especially a child, a very young child who was placed with you as early in her life as she was. I take this very seriously, that's why I need to understand the situation and we very much need to hear from both of you.

So I don't want you to take this as a sign of disrespect but I think it's important that we conduct ourselves in a way that reflects the status that everybody has.

Counsel, I want you all to think about whether you object to [Appellants'] counsel basically assisting [Appellants] to present their own testimony. I don't think there is anything that prohibits it, I also don't think there is anything that specifically allows it. You don't have to respond to me right now on that.

N.T., 8/26/22, at 6-12 (emphasis added).

CYF then proceeded to call three witnesses to testify: Natasha Seasoltz, clinical supervisor for Pressley Ridge Treatment Foster Care; Ronnie Tustin, CYF caseworker; and Rachel Patterson, treatment coordinator for Pressley Ridge.[5] Following their testimony, the juvenile court permitted Appellants' counsel to guide Appellants through their testimony.[6] At the conclusion of the hearing, the juvenile court announced that it was granting CYF's motion. My

_____

[5] In accordance with Appellants' representations to the juvenile court at the beginning of the hearing, **see id.,** Appellants did not cross-examine these witnesses.

[6] I note that, before the first Appellant (former foster mother) testified, Appellants' counsel told the juvenile court that Appellants had a binder of exhibits. N.T., 8/26/22, at 69. The juvenile court responded, "Yeah, don't know about that. [Appellants] do not necessarily have any right to introduce exhibits. I will listen to testimony and … if there is something you want me to look at, I'll see what I think about that." **Id.** Appellants' counsel replied, "I will try to keep this as brief as possible, Your Honor." **Id.** Later, when Appellants' counsel called the other Appellant (former foster father) to testify, the following transpired:

> [Appellants' Counsel:] Your Honor, just for the record[,] I want to put on the record that based on my interpretation of the right to be heard, the juvenile rules that also give under the Pennsylvania and United States Constitution [*sic*] the right for [Appellants] to present exhibits, cross-examine witness, et cetera. Your Honor, I just want to put that on the record:
>
> [THE COURT]: Where have you derived that understanding?
>
> [Appellants' Counsel]: Through their due process rights, Your Honor. They have a right to be heard, Your Honor, and in part being heard is being able to present all of the evidence that they have available to them.
>
> [THE COURT]; Okay, I'll note my disagreement.

N.T., 8/26/22, at 104-05.

review of the transcript shows that Appellants did not raise the 'prospective adoptive parent' exception at any time during the August 26, 2022 hearing.

A few weeks **after** the juvenile court's decision, Appellants sought to intervene in the dependency proceedings, raising the 'prospective adoptive parent' exception for the first time. By this point, however, Appellants' counsel had already affirmatively represented to the juvenile court and the parties that Appellants were not seeking to intervene. In addition, the juvenile court had already held a full removal hearing, during which Appellants were heard and never mentioned the 'prospective adoptive parent' exception. Finally, and significantly, Child had already been removed from Appellants' care by this juncture.

To me, based on the foregoing, Appellants' request to intervene came too late.[7] Appellants had their opportunity to seek intervention under the

_____

[7] The Majority states that, under the Rules of Civil Procedure, a petition to intervene may be filed at any time during the pendency of an action. **See** Pa.R.Civ.P. 2327. Initially, I question whether Rule 2327 applies to these proceedings. Pa.R.J.C.P. 1100, cmt. ("Unless specifically provided in these rules, the Pennsylvania Rules of Civil Procedure and the Pennsylvania Rules of Criminal Procedure do not apply to dependency proceedings commenced pursuant to Rule 1200 and 42 Pa.C.S. § 6301 *et seq.*"). I also point out that the comment to Rule of Juvenile Court Procedure 1133 — which governs intervention — states that a petition to intervene "may be denied if, among other reasons, there are insufficient grounds for the motion, the interest of the movant is already adequately represented, **the motion for intervention was unduly delayed, or the intervention will unduly delay or prejudice the adjudication of dependency or the rights of the parties."** **See** Pa.R.J.C.P. 1133, cmt. (emphasis added). Notwithstanding, even if the Rules of Civil Procedure did apply, I observe that they similarly state that a court may refuse a petition to intervene if "the petitioner has unduly delayed in
*(Footnote Continued Next Page)*

'prospective adoptive parent' exception prior to — or at — the removal hearing. For whatever reason, they failed to do so.[8] To allow intervention under this exception now, after a full removal hearing has been held and Child has been placed with new foster parents, would add to the instability experienced by Child, and constitute a waste of both judicial and county resources. *See* Pa.R.J.C.P. 1606, cmt. ("Stability for the child is critical. Multiple placements can add to a child's trauma. A child should not be shuffled from home to home out of convenience for a foster parent, relative, or other

---

making application for intervention or the intervention will unduly delay, embarrass or prejudice the trial or the adjudication of the rights of the parties." Pa.R.Civ.P. 2329(3).

[8] To the extent Appellants' counsel complains that she was retained days before the removal hearing and did not have the opportunity to find out if Appellants were able to intervene given the time period, *see* N.T., 9/21/22, at 7-8, I observe that she did not ask the juvenile court to postpone the removal hearing to allow her more time to research Appellants' legal options. Moreover, to the extent Appellants say they "were not aware of the importance of their need to intervene until after the August 26, 2022 proceeding concluded[,]" *see* Appellants' Brief at 30 (unpaginated), that is their fault.

person caring for the child.").[9]  As such, I would deem Appellants' request to intervene under this exception to be waived.[10]  Thus, I dissent.

_____

[9] Appellants argue that, in other cases, foster parents were allowed to assert standing after the child had already been removed from their care.  **See** Appellants' Brief at 29-30 (unpaginated) (citing **In re J.F.**, 27 A.3d 1017 (Pa. Super. 2011); **Mitch v. Bucks County Children and Youth Social Service Agency**, 556 A.2d 419 (Pa. Super. 1989); **In the Interest of K.R.**, 239 A.3d 70 (Pa. Super. 2020) (non-precedential memorandum)).  However, my review of these cases shows that none of them appear to involve prospective adoptive parents attempting to intervene pursuant to the 'prospective adoptive parent' exception after the child had already been removed from their care following a full removal hearing, during which the prospective adoptive parents were heard, affirmatively represented that they were not intervening, and never raised the 'prospective adoptive parent' exception.

[10] Though the juvenile court stated in its Pa.R.A.P. 1925(a) opinion that it did not deny Appellants' request to intervene based on waiver, this Court may affirm the juvenile court's order on any basis.  **See Dockery v. Thomas Jefferson University Hospitals, Inc.**, 253 A.3d 716, 721 (Pa. Super. 2021) ("[T]his Court is not bound by the reasoning of the trial court, and we may affirm the trial court's order on any valid basis.") (cleaned up).