J-A27016-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.E. AND R.E. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 812 MDA 2023 |

Appeal from the Order Entered April 20, 2023
In the Court of Common Pleas of Lancaster County Juvenile Division at
No(s): CP-36-DP-0000246-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: H.B., MINOR CHILD | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.E. AND R.E. | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 813 MDA 2023 |

Appeal from the Order Entered April 20, 2023
In the Court of Common Pleas of Lancaster County Juvenile Division at
No(s): CP-36-DP-0000128-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: A.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.E. AND R.E. | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 854 MDA 2023 |

Appeal from the Order Entered May 17, 2023
In the Court of Common Pleas of Lancaster County Juvenile Division at
No(s): CP-36-DP-0000246-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: H.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

J-A27016-23

APPEAL OF: S.E. & R.E.

No. 855 MDA 2023

Appeal from the Order Entered May 17, 2023
In the Court of Common Pleas of Lancaster County Juvenile Division at
No(s): CP-36-DP-0000128-2019

BEFORE:   LAZARUS, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                      **FILED: MARCH 19, 2024**

In these consolidated appeals,[1] Appellants S.E. and R.E. appeal from the trial court's orders granting the motion filed by Lancaster County Children and Youth Social Service Agency (the Agency) to modify the placement of A.B. and H.B. (Children),[2] and the orders denying Appellants' motion for reconsideration and intervention.[3]  Appellants argue that the trial court erred by concluding that Appellants lacked standing as parties to intervene in the dependency proceedings.  Appellants also claim that the Agency failed to provide Appellants with a copy of the Agency's motion to modify placement and notice of the hearing on the Agency's motion.  Lastly, Appellants challenge

_____

[*] Former Justice specially assigned to the Superior Court.

[1] On August 7, 2023, this Court granted Appellants' application for consolidation of appeals and adjusted briefing schedule.  **See** Order, 8/7/23, at 2 (*per curiam*); **see also** Pa.R.A.P. 513.

[2] Appeals at 812 MDA 2023 and 813 MDA 2023.

[3] Appeals at 854 MDA 2023 and 855 MDA 2023.

- 2 -

the constitutionality of Pa.R.J.C.P. 1606 and 42 Pa.C.S. § 6336.1. We vacate

and remand for further proceedings.

The trial court summarized the facts and procedural history of this case

as follows:

> A.B. was placed with [Appellants] shortly after birth in December 2018.[4] H.B. was later placed with [Appellants] in August 2019.[5] [] Children's Father died in December 2020, and the court terminated Mother's [parental] rights in June 2021.
>
> The first indication of issues existing within [Appellants'] home was in late 2021 when H.B. began referring to herself as "a bad girl" during therapy sessions. The therapist began working with [Appellants] on ways to adjust their parenting style to encourage a more positive self-perception in H.B. H.B. stopped her trauma therapy so that she and [R.E.] could work on parent-child interaction therapy, a form of family-based therapy. Family-based therapy focused on family communication, expectations, and understanding trauma. However, after the first session of parent-child interaction therapy on September 13, 2021, [R.E.] chose not to continue with the therapy. As of March 2022, trauma therapy remained on hold so [Appellants] could receive family-based therapy.

---

[4] The Agency filed a dependency petition for A.B. on December 26, 2018. Therein, the Agency stated that Mother and Father were abusing heroin, Mother had used heroin while she was pregnant with A.B., and Mother and Father did not have housing. *See* Dependency Pet., Docket No. DP-246-2018, 12/26/18, at 1, 4 (unpaginated).

[5] The Agency filed a dependency petition for H.B. on August 23, 2019. Therein, the Agency stated that Mother and Father had tested positive for methamphetamines, amphetamines, and opiates and did not have housing. *See* Dependency Pet., Docket No. DP-128-2019, 8/23/19, at 1, 4 (unpaginated). The Agency further explained that it previously did not have safety concerns because H.B. had been residing with a maternal relative in New Jersey. *See id.* at 4. However, H.B. was no longer residing with her relative in New Jersey and at the time the petition was filed, H.B. was in the care of unknown individuals. *See id.* at 1, 4.

- 3 -

In November 2022, the Agency placed [] Children in a respite home due to pending General Protective Services (GPS) reports and separate Child Protective Services (CPS) reports. The Children's Alliance interviewed [] Children on November 8, 2022, and one child made several disclosures requiring [further] investigation. After [Appellants] agreed to comply with various requirements by the Agency, [] Children returned to the [Appellants'] home on December 16, 2022.

Between October 31, 2022 and April 20, 2023, there have been seven (7) total reports regarding minor children in [Appellants'] home. Those included three (3) separate GPS reports and four (4) separate CPS reports. The GPS reports were investigated by the Agency. The CPS reports were investigated by the Pennsylvania Office of Children, Youth and Families (OCYF). Of the seven (7) reports, [R.E.], was named as the alleged perpetrator in all four (4) of the CPS reports and all three (3) of the GPS reports. [S.E.] was named as the alleged perpetrator in one (1) of the GPS reports only. All three (3) of the GPS reports pertaining to [R.E.] were validated. Those GPS reports involved concerns for inappropriate discipline and/or inadequate care and nurturing regarding three (3) different children, including A.B. and H.B.

Trial Ct. Op., 7/12/23, at 2-3 (some formatting altered).

The trial court explained the subsequent procedural history as follows:

On March 27, 2023, the Agency filed an emergency motion for modification of placement pursuant to Pa.R.J.C.P. 1606 due to [Appellants'] involvement with abuse allegations. That same day, the court granted the Agency's motion, entering an order [on] March 2[8], 2023[,] permitting the move effective immediately . . . . The court also scheduled a hearing on the motion because the *guardian ad litem*'s ("GAL") position as to the emergency request was unknown. The GAL later reviewed the Agency's request and the GAL stated she had no objection to the move. Accordingly, after being advised that the motion for modification was not contested [by the GAL], the court cancelled the April 11, 2023 hearing. On April 20, 2023, the court entered a second order directing that [] Children remain in the new resource home . . . .

*Id.* at 1 (footnote omitted and some formatting altered).

Following the trial court's entry of an order confirming Children's removal from Appellants' care and Children's placement with a different foster family without a hearing, Appellants filed motions captioned "motion for reconsideration, request for judicial finding of prospective adoptive parent status and party status, motion for intervention into the dependency case, and request for a hearing on the removal of the juvenile" (motion for reconsideration and intervention) at each trial court docket number. Therein, Appellants argued that as prospective adoptive parents of Children, they had status as parties to participate in the hearing to modify Children's placement and the trial court violated their due process rights by granting the Agency's motion without a hearing. *See* Mot. for Reconsideration and Intervention, 4/27/23, at 2-5 (unpaginated).

On May 17, 2023, the trial court denied Appellants' motion for reconsideration and intervention without holding a hearing. Appellants filed timely notices of appeal from the trial court's April 20, 2023 orders modifying Children's placement and from the trial court's May 17, 2023 orders denying Appellants' motion for reconsideration and intervention. Appellants and the trial court both complied with Pa.R.A.P. 1925.

Appellants raise ten issues for our review, which we restate and reorder as follows:

1. The trial court erred in denying Appellants' motion for intervention because Appellants have standing as prospective adoptive parents.

2. The trial court erred in denying Appellants' motion for intervention because Appellants are parties whose care and control of Children were at issue.

3. The trial court erred in denying Appellants' motion for intervention and by concluding that Appellants must have legal custody of Children to intervene in the dependency action.

4. The trial court erred in denying Appellants' motion for intervention and by relying on a non-precedential decision.

5. The Agency failed to provide parties notice of the hearing on the Agency's petition to remove Children from Appellants' care pursuant to 42 Pa.C.S. § 6336.1.

6. The trial court denied Appellants denied due process by removing Children from Appellants' care without a hearing.

7. The Agency failed to follow the requirements of Pa.R.J.C.P. 1606 when seeking the removal of Children from Appellants' care.

8. Pa.R.J.C.P. 1606 is unconstitutionally vague because it does not provide a mechanism for the court to determine who has standing as party.

9. Pa.R.J.C.P. 1606 is unconstitutionally vague because it provides that a court "may" schedule a hearing on modification of a child's placement.

10. 42 Pa.C.S. § 6336.1 is unconstitutional because it does not provide Appellants the rights to present evidence and confront witnesses.

Appellants' Brief at 6-10.[6]

_____

[6] While Appellants identify ten issues for our review in their statement of questions presented, the argument section of their brief is only divided into six sections: (1) Appellants' standing as parties; (2) due process requirements pursuant to 42 Pa.C.S. § 6336.1; (3) the Agency's compliance with Pa.R.J.C.P. 1606; (4) the constitutionality of Pa.R.J.C.P. 1606; (5) the constitutionality of 42 Pa.C.S. § 6336.1; and (6) "final points to consider." Appellants' Brief at 16-51. We note that the Pennsylvania Rules of Appellate Procedure require
*(Footnote Continued Next Page)*

- 6 -

**Appellants' Standing**

Appellants' first four issues are interrelated; therefore, we discuss them together. Appellants argue that the trial court erred in concluding that they lacked standing to intervene in the dependency matter. Appellants' Brief at 17-31. Specifically, Appellants have presented two theories regarding their standing. First, Appellants contend that they have standing as parties because they were persons whose care and control of Children were in question. ***Id.*** at 18-20 (citing, *inter alia*, ***In re L.C., II***, 900 A.2d 378, 381 (Pa. Super. 2006)). Alternatively, Appellants claim that as prospective adoptive parents, they have standing to intervene to contest the Agency's removal of Children from their care and seek the return of Children to their custody. ***Id.*** at 22-36 (citing, *inter alia*, ***In re M.R.F., III***, 182 A.3d 1050 (Pa. Super. 2018); ***In re Griffin***, 690 A.2d 1192 (Pa. Super. 1997); ***Mitch v. Bucks Cty. Children and Youth Social Service Agency***, 556 A.2d 419 (Pa. Super. 1989)). Appellants further argue that the trial court erred by relying on ***In re K.R.***, 669 EDA 2019, 2020 WL 3989162 (Pa. Super. filed July 15, 2020)

---

that the argument section of the brief be divided into as many parts as there are questions to be argued. Pa.R.A.P. 2119(a). Failure to do so may result in waiver. ***Ramalingam v. Keller Williams Realty Group, Inc.***, 121 A.3d 1034, 1042 (Pa. Super. 2015). While we do not condone Appellants' failure to comply with the Rules of Appellate Procedure, we find that the defect in Appellants' brief does not impede our ability to render meaningful appellate review; therefore, we decline to find waiver on this basis. ***Id.***

(unpublished mem.),[7] to conclude that the **M.R.F., III** Court's discussion about prospective adoptive parents' standing in dependency matters was *dicta*. **Id.** at 26-31. Appellants contend that the enactment of 42 Pa.C.S. § 6336.1(a) did not overrule this Court's decisions in **Griffin** and **Mitch**, and that **M.R.F., III** remains binding precedent. **Id.** Therefore, Appellants assert that the trial court erred by concluding that Appellants lacked standing and by denying their motion to intervene.

The Agency and GAL respond that the trial court did not err in concluding that Appellants lacked standing to intervene in the dependency action because Appellants did not have legal custody of Children. Agency's Brief at 21-23; GAL's Brief at 4-6.

With respect to standing, our Supreme Court has stated:

> Issues of standing generally raise pure questions of law for which we employ *de novo* review of a trial court's decision. . . . Where factual findings and credibility determinations are at issue, we will accept them insofar as they are supported by the record. In . . . appeals of child custody and dependency decisions, our plenary scope of review is "of the broadest type;" that is, an appellate court is not bound by the trial court's inferences drawn from its findings of fact, and is compelled to perform a comprehensive review of the record for assurance the findings and credibility determinations are competently supported.
>
> *      *      *
>
> In Pennsylvania, the doctrine of standing is a judicially-created tool intended to "winnow out" litigants with no direct interest in the matter, and to otherwise protect against improper parties.

---

[7] **See** Pa.R.A.P. 126(b) (providing that unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

Consequently, where the General Assembly expressly prescribes the parties who may pursue a particular course of action in Pennsylvania courts, legislative enactments may further enlarge or distill these judicially-applied principles. *See In re C.L.P.*, 126 A.3d 985, 988 n.4, 990-91 (Pa. Super. 2015) (grandparents lacked standing under Juvenile Act[8] to intervene in dependency matter, but custody statute authorized grandparents standing to pursue custody of grandchildren who were adjudicated dependent). Standing is a threshold issue and must be resolved before proceeding to the merits of the underlying action.

*In re K.N.L.*, 284 A.3d 121, 132-33, 136-37 (Pa. 2022) (some citations omitted and formatting altered).

The Juvenile Act governs dependency proceedings. The Juvenile Act provides that all parties to a dependency proceeding are entitled to counsel and have the right to present evidence and cross-examine witnesses. 42 Pa.C.S. §§ 6337, 6338(a).

However, this Court has explained:

Although the Juvenile Act does not define "party," case law from this Court has conferred the status of party to a dependency proceeding on three classes of persons: (1) the parents of the juvenile whose dependency status is at issue; (2) the legal custodian of the juvenile whose dependency status is at issue, or (3) the person whose care and control of the juvenile is in question. These categories logically stem from the fact that upon an adjudication of dependency, the court has the authority to remove a child from the custody of his or her parents or legal custodian.

*L.C., II*, 900 A.2d at 381 (citations omitted).

Section 6336.1 of the Juvenile Act provides, in relevant part:

_____

[8] 42 Pa.C.S. §§ 6301-6375.

> The court shall direct the county agency or juvenile probation department to provide the child's foster parent, preadoptive parent or relative providing care for the child with timely notice of the hearing. The court shall provide the child's foster parent, preadoptive parent or relative providing care for the child the right to be heard at any hearing under this chapter. Unless a foster parent, preadoptive parent or relative providing care for a child has been awarded legal custody pursuant to section 6357 (relating to rights and duties of legal custodian), nothing in this section shall give the foster parent, preadoptive parent or relative providing care for the child legal standing in the matter being heard by the court.

42 Pa.C.S. § 6336.1(a).

Prior to the enactment of Section 6336.1(a) on January 1, 1999,[9] this Court held that in dependency matters, prospective adoptive parents had standing to contest an agency's decision to remove a child from the prospective adoptive parents' care. **See Griffin**, 690 A.2d at 1201 (holding that the prospective adoptive parents had standing to appeal from the order removing two children from their care); **Mitch**, 556 A.2d at 423-24 (recognizing that the prospective adoptive parents had standing to petition for the return of the child to their custody).

In reaching that conclusion, this Court explained that

> [p]rospective adoptive parents, unlike foster parents, have an expectation of permanent custody which, though it may be contingent upon the agency's ultimate approval, is nevertheless genuine and reasonable. Because of this expectation of permanency, prospective adoptive parents are encouraged to form emotional bonds with the child from the first day of the placement. By removing the child from the care of the prospective adoptive parents, the agency forecloses the possibility of

---

[9] **See** Act of Dec. 15, 1998, P.L. 949, No. 126.

adoption. In light of the expectation of permanent custody that attends an adoptive placement, an agency's decision to remove a child constitutes a direct and substantial injury to prospective adoptive parents. Because prospective adoptive parents, unlike foster parents, suffer a direct and substantial injury when an agency removes a child from them, we see no reason in law or policy whey we should limit their standing to sue for custody.

**Griffin**, 690 A.2d at 1201 (quoting **Mitch**, 556 A.2d at 423).[10]

In **M.R.F., III**, the preadoptive foster parents[11] filed a motion to intervene in the dependency proceedings for the foster child in their care. **M.R.F., III**, 182 A.3d at 1053. At the hearing on the foster parents' motion to intervene, an agency caseworker testified that the foster parents were "a preadoptive placement resource" and that they had completed training and received an adoption certification from the Statewide Adoption and Permanency Network (SWAN). **Id.** at 1053-54. The trial court found that the foster parents had failed to establish "that they had attained the status of prospective adoptive foster parents[,]", concluded that they lacked standing, and denied the motion to intervene. **Id.** at 1054, 1057.

On appeal, this Court reiterated that in general, foster parents are not parties to a dependency proceeding and do not have standing to participate

---

[10] In **Mitch**, the foster parents entered into an "adoptive placement agreement" with the county agency. **See Mitch**, 556 A.2d at 419-20. The juvenile court in **Griffin** had issued an order recognizing the foster parents as prospective adoptive parents. **See Griffin**, 690 A.2d at 1201.

[11] The **M.R.F., III** Court noted that the trial court and the parties used the terms "preadoptive parent" and "prospective adoptive parent" interchangeably and treated them as identical for the purposes of that appeal. **M.R.F., III**, 182 A.3d at 1054 n.2.

- 11 -

under Section 6336.1(a). *Id.* at 1055-56. The ***M.R.F., III*** Court then noted that "our case law has carved a narrow exception to permit the **limited participation** of a foster resource [parent] who has attained prospective-adoptive status: [in that] prospective adoptive parents have standing to **contest the child welfare agency's decision to remove a child** it placed with them in anticipation for adoption." *Id.* at 1056 (citing ***Griffin***, 690 A.2d at 1201; ***Mitch***, 556 A.2d at 423) (emphases added). Ultimately, the ***M.R.F., III*** Court concluded that the trial court correctly denied the foster parents' motion for intervention "because the purpose of [the foster parents'] intervention, *i.e.*, to protest [the m]other's increased visitation and to request the initiation of further proceedings under the Adoption Act, exceeds the limited scope of participation that ***In re Griffin*** permits." *Id.* at 1058.

In ***K.R.***, the trial court determined that a foster mother "lacked standing to participate in the hearing [regarding the removal of the foster child from her home], in terms of presenting evidence and cross-examining witnesses, but that she had the right to notice and the opportunity to be heard." ***K.R.***, 2020 WL 3989162, at *2. On appeal, the foster mother challenged the trial court's holding that she lacked standing. *Id.* at *3. The ***K.R.*** Court concluded that the foster mother was not a party because she was not the child's parent, legal custodian, or the person whose care and control of the child was in question. *Id.* at *5. The ***K.R.*** Court also noted that the foster mother could not establish standing under Section 6336.1(a) because she had never been granted legal custody of the child. *Id.* Further, ***K.R.*** observed that ***Griffin***

and **Mitch** were no longer applicable "[b]ecause Section 6336.1(a) plainly changes this [Court's] prior case law, we conclude that a foster parent is not entitled to any form of standing in a dependency proceeding absent an award of legal custody, regardless of his or her 'prospective adoptive' status." **Id.** at *5 n.7 (citation omitted). The **K.R.** Court distinguished the discussion of the continued validity of **Griffin** and **Mitch** in **M.R.F., III** as *dicta*[12] because that discussion "was not essential to that opinion's holding . . . ." **Id.** (citations omitted).

It is well-established that "it is beyond the power of a Superior Court panel [of three judges] to overrule a prior decision of the Superior Court, except in circumstances where intervening authority by our Supreme Court calls into question a previous decision of this Court." **E.C.S. v. M.C.S.**, 256 A.3d 449, 456 (Pa. Super. 2021) (citation omitted and formatting altered). However, "this Court, sitting *en banc*, may overrule the decision of a three-judge panel of this Court." **Salsberg v. Mann**, 262 A.3d 1267, 1271 n.3 (Pa. Super. 2021) (*en banc*) (citation omitted).

Here, the trial court explained:

[Appellants] rely on **In** [**re**] **M.R.F., III**, 182 A.3d 1050 (Pa. Super. 2018) as the reason why they are permitted to intervene and have party standing to contest a move. The court finds the

---

[12] *Obiter dictum* (plural form "*obiter dicta*") is "[a] judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)." **Klar v. Dairy Farmers of Am., Inc.**, 300 A.3d 361, 383 n.104 (Pa. 2023) (quoting *Obiter Dictum*, BLACK'S LAW DICTIONARY (11th ed. 2019)).

footnote 7 of [***In re K.R.***, 669 EDA 2019, 2020 WL 3989162 (Pa. Super. filed July 15, 2020) (unpublished mem.)] persuasive. . . .

\* \* \*

The *dicta* of ***M.R.F., III*** has no precedential value. The court granted the request of the Agency to remove [] Children from [Appellants'] home on an emergent basis on March 2[8], 2023. [Appellants] did not seek to intervene in the case. Then the Agency requested to modify the placement of [] Children and remove [] Children from [Appellants'] home on April 11, 2023. [Appellants] did not seek to intervene in the case. [Appellants] did not seek to intervene until after the court made the decision to remove [] Children from their care on April 20, 2023.

[Appellants] did not seek to intervene in the case in a timely manner. Moreover, the legislature enacted Section 6336.1 specifically stating that preadoptive parents have no party standing. Unless and until the Pennsylvania legislature changes Section 6336.1, Section 6336.1(a) plainly changes prior case law, and a foster parent is not entitled to any form of standing in a dependency proceeding absent an award of legal custody.

Trial Ct. Op. at 5-6 (some formatting altered).

Based on our review of the record, we disagree with the trial court's conclusions. Although we recognize that foster parents are generally not considered parties in a dependency action, ***see M.R.F., III***, 182 A.3d at 1055; ***L.C., II***, 900 A.2d at 381, this Court has continued to hold that prospective adoptive parents can establish standing as parties to intervene in dependency proceedings for the limited purpose of contesting an agency's decision to remove a child from their care. ***See M.R.F., III***, 182 A.3d at 1056 (discussing ***Mitch*** and ***Griffin*** and explaining that the "prospective adoptive parent" exception remains viable following the enactment of Section 6336.1(a)). Although the ***K.R.*** Court dismissed the ***M.R.F., III*** Court's analysis of the

prospective adoptive parent exception as *dicta*, **see K.R.**, 2020 WL 3989162, at *5 n.7, we observe that the **K.R.** decision is an unpublished memorandum, therefore its analysis of **M.R.F., III**, a precedential opinion, is limited to its persuasive value and is not binding. Accordingly, any court considering these issues is free to agree or disagree with the **K.R.** court's conclusions concerning **M.R.F., III**. On this record, for the reasons discussed herein, we conclude that the trial court erred in concluding that Appellants lacked standing based on **K.R.**[13]

In sum, because Appellants may have standing[14] to intervene in the underlying dependency matters, we conclude that the trial court erred by denying Appellants' motion for intervention[15] without a hearing. **See M.R.F.,**

---

[13] **See** Pa.R.A.P. 126(b) (stating that non-precedential decisions filed by this Court after May 1, 2019 may be cited for persuasive value). Only this Court sitting *en banc* or the Pennsylvania Supreme Court can determine if **M.R.F., III** should be overruled. **See generally Salsberg**, 262 A.3d at 1271 n.3; **see also E.C.S.**, 256 A.3d at 456.

[14] We emphasize that the "prospective adoptive parent" standing exception is limited to contesting an agency's decision to remove a child it placed with the prospective adoptive parents in anticipation of adoption. **See M.R.F., III**, 182 A.3d at 1056 (explaining that this exception permits "the limited participation" of prospective adoptive parents in a dependency matter "to contest [an] agency's decision to remove [a] foster child from their physical custody" (citation omitted)).

[15] We note that an appeal does not lie from an order denying a motion for reconsideration. **See generally Karschner v. Karschner**, 703 A.2d 61, 62 (Pa. Super. 1997). Therefore, with respect to the appeals at 854 MDA 2023 and 855 MDA 2023, we limit our discussion to the trial court's order denying Appellants' motion for intervention.

*III*, 182 A.3d at 1056; *Griffin*, 690 A.2d at 1201; *Mitch*, 556 A.2d at 423. Here, on this record, the trial court ordered the removal of Children and modified their placement without a hearing. Therefore, the trial court did not adjudicate whether Appellants had standing as parties to intervene as prospective preadoptive parents or alternatively, as persons whose care and control of Children were in question. For these reasons, we vacate the trial court's April 20, 2023 orders modifying Children's placement at 812 MDA 2023 and 813 MDA 2023, and the trial court's May 17, 2023 orders denying Appellants' motion for intervention at 854 MDA 2023 and 855 MDA 2023. We remand for the trial court to hold a hearing to determine whether Appellants have standing as parties to intervene in the dependency matter to contest the removal of Children as prospective adoptive parents or as persons whose care and control of Children is in question.[16]  *See M.R.F., III*, 182 A.3d at 1054-55, 1057-58 (reflecting that the juvenile court held a hearing on the foster parents' petition to intervene because there was evidence supporting their claim that they had attained the status of prospective adoptive parents); Pa.R.J.C.P. 1133(B) (providing that a juvenile court shall hold a hearing before ruling on a petition to intervene).

We note that, notwithstanding our vacatur of the trial court's April 20, 2023 orders modifying Children's placement, we do not disturb the trial court's March 28, 2023 orders granting the Agency's emergency motion for

---

[16] Because of our disposition, we decline to address Appellants' remaining issues.

modification of placement. This will maintain the status quo while the trial court addresses Appellants' petition to intervene on remand.

Orders vacated. Remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/19/2024